UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL FINANCIAL SUPPORT, INC., d/b/a Student Financial Resource Center, d/b/a College Financial Advisory; and ARMOND ARIA a/k/a ARMOND AMIR ARIA, individually and as owner and CEO of GLOBAL FINANCIAL SUPPORT, INC.,<br><br>Defendants. | Case No.: 15-cv-02440-GPC-WVG<br><br>**ORDER GRANTING STAY**<br><br>[ECF No. 25] |

Before the Court is a motion to stay proceedings filed by Defendants Global Financial Support, Inc. d/b/a Student Financial Resource Center d/b/a College Financial Advisory and Armond Aria (collectively "Defendants"). (Mot. Stay, ECF No. 25.)   The motion has been fully briefed. (*See* Opp'n, ECF No. 31; Reply, ECF No. 32.)  The Court finds the motion suitable for disposition without oral argument. CIV. L. R. 7.1(d)(1).  Upon consideration of the moving papers and the applicable law, and for the following reasons, the Court **GRANTS** in part Defendants' motion and **STAYS** the case for **120 days** following this Order.

//

# BACKGROUND

On October 29, 2015, Plaintiff Consumer Financial Protection Bureau's ("Plaintiff") filed its Complaint against Defendants for alleged violations of Sections 1031(a), 1036(a)(1)(B), 1053 and 1055 of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §§ 5531, 5536(a)(1)(B), 5564(a) and 5565 in connection with the offering, marketing, sale and provision of student financial aid advisory services, and under Section 1016 of Regulation P, 12 C.F.R. § 1016.4(a), based on Defendants' failure to provide a required notice. (Compl. ¶ 1, ECF No. 1.) Defendant Aria is the owner and registered agent of Global Financial Support, Inc., the President of College Financial Advisory, and the CEO of Student Financial Resource Center. (*Id.* ¶ 10.)

Plaintiff alleges that from at least January 2011 until the present (the "Relevant Period"), Defendants have run a deceptive scheme to persuade high school seniors, enrolled college students and their families to participate in a student financial aid "program." (*Id.* ¶ 22.) As part of the program Defendants promise to match students with targeted financial aid opportunities. (*Id.*) Defendants identify these consumers by purchasing lists of student information from online vendors. (*Id.* ¶ 28.) Plaintiff alleges that Defendants have sent millions of letters to consumers nationwide that employ seals and watermarks of iconic images found predominantly on seals and watermarks used by government agencies. (*Id.* ¶ 30.) At the top of each letter is a bold print box that includes a "filing deadline" and a "filing status," which always reads "pending." (*Id.* ¶ 31.) Each letter also includes in large bold print in a box at the center of the page a nine–digit "student profile number" and the name of the student's academic institution. (*Id.* ¶ 32.)

The letters instruct students or their families to fill out and return an application called a "Student Aid Profile Form" along with a "refundable processing fee"—which has varied from $59 to $78 depending on the year—to proceed with the student aid "program" and "apply for the maximum merit and need–based financial aid programs." (*Id.* ¶¶ 33–34.) Plaintiff alleges that the "Student Aid Profile Form" looks visually similar to the Free Application for Federal Student Aid ("FAFSA") and uses similar terms. (*Id.* ¶ 33.) On the

Student Aid Profile Form, Defendants promise to "review" and "assess" borrowers' applications and "strive to provide as many targeted financial aid opportunities as possible to each and every student, regardless of his/her financial status or academic performance." (*Id.* ¶ 35.) Defendants' letters warn that completed forms must be received by the filing deadline and that "the entire processing fee will be returned within ten (10) business days to all students who do not qualify or do not receive financial aid funding." (*Id.* ¶¶ 37, 39.) Plaintiff alleges that Defendants' letters represent that consumers will lose their opportunity to obtain student financial aid unless they submit the Student Aid Profile Form and pay the fee to Defendants by a specified date. (*Id.* ¶ 40.) Plaintiff alleges that Defendants' "program" deadline does not correspond to any real deadline associated with any particular financial aid opportunity and is an arbitrary date that serves only to give the letters an artificial sense of urgency. (*Id.* ¶ 60.) Plaintiff alleges that Defendant Global Financial Support, Inc. claims its physical address is 3268 Governor Drive, Suite F, PMB 144, San Diego, CA 92122 but the address is merely a PostalAnnex+ store near Defendant Aria's home and not a business address. (*Id.* ¶¶ 7, 49.)

Along with the letters, Plaintiff alleges that Defendants' scheme utilizes two websites—www.collegefinadv.org and www.studentctr.org—with .ORG as its generic top–level domain. (*Id.* ¶ 40.) The main pages of these two websites prompt consumers to input a "Student Profile Number" in order to enter the site and view content. (*Id.* ¶ 45.) However, although consumers are instructed that they must input their individual nine–digit number in order to access the content on the website, there is no individualized content on the website. (*Id.* ¶ 47.) The website provides instructions for downloading and filling out the Student Aid Profile Form. (*Id.*)

Defendants claim consumers can use a toll–free phone number to reach the "College Financial Advisory Student Aid Information Center." (*Id.* ¶ 48.) Consumers' calls to this number and the number provided for the Student Financial Resource Center are directed to a third–party answering service where an unaffiliated person answers the call, disclaims any association with the Defendants, and purportedly forwards any message along to the

3

Defendants. (*Id.*)

Plaintiff alleges that Defendants do not provide the services offered in their letters and on their website and do not fulfill their promise that "the entire processing fee will be returned within ten (10) business days to all students who do not qualify or do not receive financial aid funding." (*Id.* ¶¶ 51, 57.) Instead, many consumers receive absolutely nothing or a generic booklet that is not tailored to the consumers' circumstances in exchange for sending in their Student Aid Profile Form and fee. (*Id.* ¶¶ 58–59.) Plaintiff alleges that Defendants have obtained at least $4.7 million in fees from at least 76,000 consumers during the Relevant Period. (*Id.* ¶ 60.)

On April 7, 2016, Defendants filed the instant motion to stay proceedings. (Mot. Stay, ECF No. 25.) On April 26, 2016, Magistrate Judge Gallo stayed all discovery pending resolution of Defendants' motion to stay. (ECF No. 30.) On April 29, 2016, Plaintiff filed an opposition (Opp'n, ECF No. 31) and on May 5, 2016, Defendants filed a reply (Reply, ECF No. 32).

## LEGAL STANDARD

"The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Keating v. Office of Thrift Supervision,* 45 F.3d 322, 324 (9th Cir. 1995). Parallel civil and criminal proceedings are unobjectionable under Ninth Circuit precedent unless such proceedings substantially prejudice the right of the parties involved. *Id.* "The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made 'in light of the particular circumstances and competing interests involved in the case.'" *Id.* (quoting *Fed. Sav. and Loan Ins. Corp. v. Molinaro,* 889 F.2d 899, 902 (9th Cir. 1989)).

In deciding whether to stay civil proceedings in light of parallel criminal proceedings, courts consider the following six factors: (1) the extent to which the defendant's Fifth Amendment rights are implicated; (2) the plaintiff's interests in proceeding expeditiously and potential prejudice resulting from a delay; (3) judicial efficiency; (4) the interests of nonparties; and (5) the public's interests in the pending civil

and criminal litigation. *Keating,* 45 F.3d at 324–25. However, "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375–76 (D.C. Cir. 1980).

## DISCUSSION

After considering the *Keating* factors, the Court finds that the circumstances weigh in favor of granting a temporary stay in the pending civil action.

### A.     Defendants' Fifth Amendment Rights

"A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating,* 45 F.3d at 326. Thus, while the extent to which a defendant's Fifth Amendment rights are implicated is a "significant factor" to be considered, it is "only one consideration to be weighed against others." *Id.* Nonetheless, other than cases involving bad faith or malice on the part of the government, "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Dresser,* 628 F.2d at 1375–76. In such cases, allowing the civil action to proceed may undermine the defendant's Fifth Amendment privilege, expand criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the defense strategy to the prosecution before the criminal trial, or cause other prejudice. *Id.* at 1376.

Accordingly, where the civil proceeding wholly or substantially overlaps with the criminal proceeding, a court may be justified in staying the civil case, deferring civil discovery, or taking other protective measures. *Id.* The case for staying civil proceedings is "a far weaker one" when "[n]o indictment has been returned[, and] no Fifth Amendment privilege is threatened." *Molinaro*, 889 F.2d at 903 (citing *Dresser*, 628 F.2d at 1376). However, the mere possibility of criminal prosecution is all that is necessary for the Fifth Amendment privilege against self–incrimination to be invoked. *See Matter of Seper,* 705

F.2d 1499, 1501 (9th Cir. 1983). While a defendant in a criminal case may constitutionally assert her Fifth Amendment rights with no adverse consequence, a trier of fact in a civil case may draw an adverse inference from invocation of the Fifth Amendment. *Doe ex rel. Rudy–Glanzer v. Glanzer,* 232 F.3d 1258, 1264 (9th Cir. 2000). But the Ninth Circuit has recognized that this consequence alone does not compel a stay pending the outcome of a related criminal case. *ESG Capital Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1046 (C.D. Cal. 2014) (citing *Keating,* 45 F.3d at 326).

Here, Defendant Aria's Fifth Amendment rights are clearly implicated. First, although no criminal charges have been filed, the Court has been presented with evidence of a current, ongoing law enforcement investigation by the IRS and FBI based on the same conduct as here, namely Defendants' allegedly fraudulent business operations and practices. The parallel investigations appear to be as a result of a coordinated effort between the CFPB, IRS and FBI. On October 29, 2015, an agent for the CFPB, IRS agents and a process server concurrently arrived at Defendant Aria's personal residence. (Aria Decl. ¶ 4, ECF No. 25–1.) The IRS agents, pursuant to criminal warrant (Aria Decl., Ex. A, ECF No. 25–1), searched Defendant Aria's residence and seized electronic equipment, financial documents and cash belonging to Defendants. (*Id*. ¶¶ 5, 11.) Defendant Aria has been advised that the IRS's criminal case against him and Global Financial has been referred to the U.S. Attorney's Office and that federal officials have repeatedly represented to Defendants' criminal defense counsel that the criminal investigation is ongoing. (*Id.* ¶ 13.) Defendant Aria represents that the federal government closed his business credit card and bank accounts associated with Global Financial. (*Id.* ¶ 12.)

Proceeding in this case while invoking the Fifth Amendment will protect Defendant Aria against self–incrimination. However the civil proceeding may "expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case." *Dresser*, 628 F.2d at 1376. With respect to Global Financial, the law is clear that a corporation has no privilege against compulsory self–incrimination. *United*

*States v. Kordel,* 397 U.S. 1, 7–8 & n. 9 (9th Cir. 1970) (collecting cases). Nevertheless, the Fifth Amendment rights of every director or officer who may speak on behalf of the corporation are implicated, and thus, the corporation is likely to be greatly prejudiced in its ability to meaningfully defend itself in the civil matter. *See Cadence Design Sys. v. Avant!, Inc.,* No. C 95–20828, 1997 U.S. Dist. LEXIS 24147 (N.D. Cal. July 22, 1997) (holding that a partial stay was appropriate in a civil proceeding against a corporate defendant where certain key witnesses would not be able to testify on behalf of the corporation until the conclusion of criminal proceedings). Here, Defendant Aria has represented that he is the only person who can testify on behalf of Global Financial as the sole owner and operator of Global Financial. (Aria Decl. ¶ 2, ECF No. 25–1.) Although Plaintiff argues that Global Financial had other employees who may testify (*see* Opp'n at 11, ECF No. 31), the parties' representations suggest that Defendant Global Financial *is* essentially Defendant Aria.

Thus, the Court thus finds that Defendants' risk of forfeiting the privilege against self–incrimination or the ability to defend in this civil proceedings weighs in favor of granting a stay.

**B.     Prejudice to Plaintiff**

Courts have recognized that a civil plaintiff has an interest in having her case resolved quickly. *See S.E.C. v. Loomis*, No. 2:10–cv–00458–KJM–KJN, 2013 WL 4543939, at *2 (E.D. Cal. Aug. 27, 2013). Courts have also recognized that there may be prejudice to a plaintiff where a stay of discovery might result in her inability to locate other potential defendants. *See Gen. Elec. Co. v. Liang*, No. CV 13–08670 DDP(VBKx), 2014 WL 1089264, at *4 (C.D. Cal. Mar. 19, 2014).

Plaintiff argues that it has a strong interest in proceeding expeditiously with this litigation and remediating impacted consumers. (Opp'n at 11, ECF No. 31.) As the agency charged with the enforcement of federal consumer financial laws, the CFPB must be able to respond quickly to violations and seek prompt judicial redress. Here, however, it appears unlikely that the alleged violations will continue if the case is stayed. Defendant Global Financial is closed or nonoperational as Defendant Aria does not have access to corporate

bank or credit card accounts.  (Aria Decl. ¶ 12, ECF No. 25–1.)  Plaintiff argues that although Defendant Aria claims he closed Global Financial, "there is no injunction and Defendants did not guarantee that GFS, Inc. will stay closed."  (Opp'n at 12, ECF No. 31.) Plaintiff also argues that Defendant Aria has withdrawn at least $75,000 in cash from his corporate accounts since this action commenced and Plaintiff's ability to obtain remediation will be "severely diminished if Defendants have time to manipulate their assets during a stay."  (*Id.* at 13.)   If the risk if dissipating assets is as real and imminent as Plaintiff represents, the CFPB or the other federal agencies conducting a criminal investigation are free to seek a temporary restraining order to ensure the preservation of corporate assets.

Plaintiff also argues that an indefinite stay would be prejudicial because it will make it more difficult for the CFPB to locate witnesses, especially in this case where Plaintiff's witnesses are students, a transient population.  (*Id.*)  The Court agrees that the delay associated with a stay may affect the availability of witnesses and documents or the quality of testimony.  *See Dresser,* 628 F.2d at 1377  ("If Justice moves too slowly . . . witnesses may die or move away, memories may fade . . . .").  However, it is unlikely that a temporary stay would meaningfully affect Plaintiff's ability to locate witnesses.  Furthermore, federal agents have already seized many documents from Defendant Aria's home, suggesting that much of the relevant evidence may be in the government's possession.  Thus, the Court finds that although this factor favors Plaintiff, it does not tip the overall analysis in Plaintiff's favor.

**C.**     **Burden on Defendants**

Courts have found that even when a defendant's Fifth Amendment rights are implicated, this factor does not support granting a stay unless the defendant can show other "compelling factors as described in *Keating*."  *See Gen. Elec. Co.*, 2014 WL 1089264, at *5.  The Ninth Circuit has found that where a defendant has had adequate time to prepare for a related civil trial, the burden on the defendant is substantially diminished.  *See Keating*, 45 F.3d at 325.

As discussed above, this civil proceeding implicates Defendant Aria's Fifth Amendment rights to a significant degree. Moreover, based on the coordinated effort between the federal agencies, it is likely that the agencies are/will be sharing information to the extent permitted by law if the criminal proceedings continue, which weighs in favor of Defendants' burden. Defendants also argue that due process rights are implicated due to "their inability to elicit useful testimony from Defendant Aria who will (properly) invoke his right against self–incrimination." (Mot. Stay at 10, ECF No. 25.) Plaintiff responds that Defendant Aria will be unable to provide exculpatory testimony that Defendants earned at least $4.7 million between 2011 and 2015 from at least 76,000 consumers because Defendants have conceded this in their Answer. (Opp'n at 14, ECF No. 31.) On balance, the Court finds that this factor weighs in favor of Defendants.

**D.     Judicial Efficiency**

The third *Keating* factor considers "the convenience of the court in the management of its cases, and the efficient use of judicial resources." *SEC v. Alexander*, No. 10-CV-04535-LHK, 2010 WL 5388000, at *5 (N.D. Cal. Dec. 22, 2010) (citing *Keating,* 45 F.3d at 325). Courts have recognized that this *Keating* factor normally does not favor granting a stay, because "the court has an interest in clearing its docket." *Molinaro,* 889 F.2d at 903. On the other hand, a number of courts have concluded that staying a parallel civil proceeding in its early stages may prove more efficient in the long run. *See Douglas v. United States,* Nos. C 03–04518, C 04–05357, 2006 WL 2038375, at *5 (N.D. Cal. 2006) (allowing the criminal action to proceed first may narrow the issues and streaming discovery in the civil proceeding); *Jones v. Conte*, No. C 045312S1, 2005 WL 1287017, at *2 (N.D. Cal. Apr. 19, 2005) (a stay would allow civil discovery to proceeding unobstructed by self–incrimination concerns). While this factor on balance favors Plaintiff, a stay may make more efficient use of judicial resources.

**E.     Interests of Third–Parties**

Plaintiff argues that the 76,000 plus consumers impacted by Defendants' scheme have an interest in obtaining justice and gaining remediation expeditiously. The Court

9

agrees that affected consumers' interest in obtaining relief is strong. Plaintiff also argues that a stay would diminish the CFPB's ability to obtain remediation for consumers because Defendant Aria is dissipating assets. (Opp'n at 13, ECF No. 31.) As discussed *supra*, Defendants contend that they do not have access to corporate funds and federal agencies can seek injunctive relief if the possibility of dissipation is imminent. Thus, although the Court agrees that consumers have a significant interest in timely litigation of the civil proceedings, a temporary stay would not significantly impair those interests.

### F.     Interests of the Public

Plaintiff argues that there is a strong public interest in proceeding with the civil case because delay of proceedings may be detrimental to public confidence, the public has an interest that an agency charged with enforcing federal consumer protection laws is able to perform its statutory duties, and the public interest demands that Defendants' scheme be stopped and consumers received remediation. (Opp'n at 16, ECF No. 31.) The Ninth Circuit has recognized that delay of enforcement proceedings may be detrimental to public confidence in an agency's enforcement scheme. *Keating,* 45 F.3d at 326. However, the public also has an interest in ensuring the integrity of criminal proceedings. Thus, although the public has a strong interest in the speedy resolution of the civil enforcement action, a temporary stay would not undermine the public's confidence in the CFPB or affected consumers' ability to receive remediation.

//
//
//
//
//
//
//
//
//

**CONCLUSION**

Balancing Defendants' Fifth Amendment privilege against the other *Keating* factors, the Court concludes that the particular circumstances of this case warrant a stay. Accordingly, the Court **GRANTS** in part Defendants' motion to stay. The Court **STAYS** this case for a period of **120 days** and **VACATES** all dates presently set. The Court **SETS** a status conference for **September 16, 2016 at 1:30 p.m.**, at which time the parties will address whether a further stay of proceedings is necessary. The parties shall file a joint status conference statement on or before **September 9, 2016**, apprising the court of the propriety of continuing or vacating the stay.

**IT IS SO ORDERED**.

Dated: May 17, 2016

Hon. Gonzalo P. Curiel
United States District Judge