Armond Aria (Pro Se Defendant)
8650 Genesee Ave.
Suite 214 - Box# 928681
San Diego, CA 92122
Tel: (858) 314-9777
**Email: ariaarmond@gmail.com**

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>Global Financial Support, Inc., d/b/a Student Financial Resource Center, d/b/a College Financial Advisory; and<br><br>Armond Aria a/k/a Armond Amir Aria, individually, and as owner and CEO of Global Financial Support, Inc.;<br><br>Defendants. | Case No. 15-cv-02440-GPC-AHG<br><br>**DEFENDANT's OPPOSITION TO PLAINTIFF'S MEMORANDUM IN SUPPORT OF THE BUREAU'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE BUREAU'S CLAIMS AGAINST DEFENDANT ARMOND ARIA**<br><br><br>Date: December 11, 2020.<br>Time: 1:30pm<br>Crtrm: 2D<br>Judge: The Honorable Gonzalo P. Curiel |

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES …………………………….…………....…iii

INTRODUCTION…………………………………………………………1

BACKGROUND AND SUMMARY OF FACTS………………………….2

LEGAL ARGUMENT………………………………………………...7

I.     Legal Standard………………………………………………7

II.    The Bureau Lacks The Legal Authority to Bring
       This Lawsuit Against Global and Mr. Aria…………………..…………...7

       A.    Global is Not a "Service Provider"………………………...8

             1.    Global Did Not Provide "Consumer Financial Products
                   or Services"………………………………………8

                   a.    Mr. Aria and Global Did Not Provide "Individualized"
                         Financial Advisory Services to Consumers……………..8

                   b.    Global Did Not Provide Proprietary Services…………10

                   c.    Global Promised and Published General Information…10

       B.    Global is Not a "Covered Person" and Mr. Aria is Not a
             "Related Person"………………………………………11

III.   Global and Mr. Aria Did Not Deceive Consumers………………………...11

       A.    Global's Sales Practices Were Not Likely to Mislead Consumers….11

             1.    Count One of the Bureau's Complaint is Factually
                   Unfounded Because Global Did Not Offer to Apply for
                   Financial Aid on Behalf of Consumers, Nor Did it
                   Offer its Own Financial Aid or Scholarships………………..12

             2.    Count Two is Unfounded Because Global Did Not
                   Promise to Provide "Individualized" Financial
                   Advisory Services…………………………………15

             3.    Count Three is Unfounded Because the Deadline
                   Was a Legitimate, Necessary Part of
                   Global's Business Practices…………………………..16

             4.    Global Did Not Claim to be Affiliated with the
                   Federal Government or Educational Institutions……..……...17

             5.    Consumers Consented to a Contract with Global…………….17

             6.    Additional Evidence—Conveniently Omitted by
                   the Bureau—Demonstrates That No Deception Occurred…….18

                   a.    Prior Investigations Found that Mr. Aria Did
                         Not Engage in Any Wrongdoing………………………18

                   b.    The Bureau's Fourteen, Disgruntled Witnesses
                         are Not Credible…………………………………..…19

     c. Global's Low Complaint Rate and Refund
       Request Rate Demonstrate that Global and
       Mr. Aria Did Not Deceive Consumers…....…………..19
     d. The Number of Better Business Bureau
       Complaints are Minimal………………………………19
     e. The Bureau Exaggerated the Number of Sentinel
       Complaints…………………………………………….20
     f. Complaints from Colleges Were Unfounded
       and Often Rescinded……………..……………………21
     g. Plaintiff's Evidence for Some of the Alleged
       "Complaints" is Inadmissible………………………….21
     h. Mr. Aria has Provided Sufficient Examples of the
       Guidebooks…………………………………………….22
  B. The Question of Whether Any Deception Occurred
    is a Question for the Jury……………………………………….23
IV. The Bureau is Not Entitled to Adverse Inferences Against Mr. Aria……...23
CONCLUSION……………………………………………………………....25

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)……………………………………………………………7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)……………………………………………………………7

*Consumer Fin. Prot. Bureau v. Gordon*,
819 F.3d 1179 (9th Cir. 2016)…………………………………………………12

*Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.*,
____ F.Supp.3d.____, (N.D. Ga. July 4, 2015)………………………………...12

*Consumer Fin. Prot. Bureau v. ITT Educ. Servs., Inc.*,
____ F.Supp.3d ____, (S.D. Ind. Mar. 6, 2015)………………………………12

*Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc.*,
2014 WL 12581776 (C.D. CA 2014)…………………………………………..12

*Diaz v. Eagle Produce Ltd. P'ship*,
521 F.3d 1201 (9th Cir. 2008)………………………………………………...7

*Employee Painters' Trust v. J & B Finishes*,
77 F.3d 1188 (9th Cir.1996)…………………………………………………18

*Fields v. Blue Shield of California*,
163 Cal.App.3d 570, 209 Cal. Rptr. 781 (1985)………………………………18

*FTC v. Connelly*,
2006 U.S. Dist. LEXIS 98263 (C.D. CA 2006)…………………………….12, 23

*FTC v. Gill*,
265 F.3d 944 (9th Cir.2000)…………………………………………………12

*FTC v. Lights of Am. Inc.*,
2012 U.S. Dist. LEXIS 199754………………………………………………7

*FTC v. Stefanchik*,
559 F.3d 924 (9th Cir.2009)…………………………………………………………12

*Iglesia Ni Cristo v. Cayabyab*,
2019 WL 3997474 (N.D. Cal. Aug. 23, 2019)...……………………………...…22

*Jeter v. Credit Bureau, Inc.*,
760 F.2d 1168 (11th Cir. 1985)………………………………………………...23

*Malcom v. Farmers New World Life Ins. Co.*,
4 Cal.App.4th 296, 5 Cal.Rptr.2d 584 (1992)…………………………………..18

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
89 Cal. App. 4th 1042, 107 Cal. Rptr. 2d 645 (2001)…………………………17

*Newton v. Am. Debt Servs., Inc.*,
854 F. Supp. 2d 712 (N.D. Cal. 2012)…………………………………………17

*Rodriguez v. Am. Techs., Inc.*,
136 Cal. App. 4th 1110, 39 Cal. Rptr. 3d 437 (2006)…………………………17

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
732 F. Supp. 2d 952 (N.D. Cal. 2010)…………………………………………18

*S.E.C. v. Colello*,
139 F.3d 674 (9th Cir.1998)…………………………………………………...24

*S.E.C. v. Jasper*,
678 F.3d 1116 (9th Cir. 2012)…………………………………………………24

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
809 F.2d 626 (9th Cir. 1987)………………………………………………...7

*United States v. Needham*,
852 F.3d 830 (8th Cir. 2017)…………………………………………………22

*United States v. Shumway*,
199 F.3d 1093 (9th Cir. 1999)…………………………………………………7

iv

**STATUTES**

12 U.S.C. § 5481(5)………………………………………………………….8
12 U.S.C. § 5481(6)………………………………………………………….8
12 U.S.C. § 5481(15)(A)(viii)……………………………………………....8
12 U.S.C. § 5481(26)(A)…………………………………………………….8
12 U.S.C. § 5531(a)………………………………………………………….7
15 U.S.C. § 5536(3)………………………………………………………...11
Cal. Civ. Code § 1550……………………………………………………..17

**RULES**

Fed. R. Civ. P. 56(c)………………………………………………………..7
Fed. R. Evid. 902, Advisory Committee Notes to 2017 Amendments………………22

# INTRODUCTION

Defendant Armond Aria ("Defendant" or "Mr. Aria") had been successfully running his self-made business, Global Financial Support Inc. ("Global"), for ten years before the Consumer Financial Protection Bureau ("the Bureau" or "Plaintiff") commenced this ill-conceived lawsuit. Mr. Aria founded and developed Global after he was inspired by his previous employment dealing with the struggles of undergraduate financial aid and scholarships.

Global would reach out to potential consumers—students and their parents—via an explanatory letter ("Letter(s)") and a form ("Form(s)")[1] that the student or their family could choose to fill out and mail back to Global to receive their financial aid guidebook ("Guidebook"). Contrary to the Bureau's baseless claims, nowhere in any iteration of the Letter(s) or Form(s) did Global state or even suggest that it was affiliated with the government or educational institutions, that it offered financial aid directly, or that it would apply for aid on consumers' behalf. Global even went to great lengths to modify its Letter(s) and Form(s) during the relevant period (July 2011 through October 2015) to ensure that the message and intent of the business were clear to all consumers. Global was so committed to consumer satisfaction and transparency that it even offered a full refund if consumers were unable to obtain aid from at least one of the sources provided in its Guidebooks. In fact, throughout the 10-year period of its operation, Global's consumer complaint rate was less than 0.002%.[2]

The Bureau nonetheless alleges that Global and Mr. Aria engaged in "deceptive" sales practices, as defined by the Consumer Financial Protection Act (CFPA) and now moves for "partial" summary judgment on Counts I–III of its Complaint.[3] However, as will

---

[1] The "(s)" is included because there are different year-based editions of these materials and Mr. Aria herein refers to *all* editions when using "Form(s)" and "Letter(s)."

[2] Aria Decl. ¶¶17, 158.

[3] The Bureau also attempts to disguise what is in fact a motion for *full* summary judgment as a motion for "*Partial* Summary Judgment." A finding for the Bureau on Counts I–III are enough to destroy the entire case for Defendant. Because Counts IV and V depend on the very same facts, a finding of summary judgment for Plaintiff on Counts I–III would violate Mr. Aria and Global's Seventh Amendment right to a jury trial for Counts IV and V. Therefore, this Court should treat the motion as a complete motion for summary judgment and note the severity of a judgment in favor of the Plaintiff.

be demonstrated, the Bureau has *not* met the standard for a grant of summary judgment for three reasons: (1) Global and Mr. Aria are not governed by the CFPA, (2) the elements for claims of deception have not been met because there are numerous genuine disputes of material facts, and (3) the question of whether any deception occurred is a question for the jury. Importantly, Mr. Aria disputes 48 out of Plaintiff's 67 supposedly "undisputed" facts (71%).[4] Thus, the Bureau's motion for partial summary judgment must be denied.

## BACKGROUND AND SUMMARY OF FACTS

Global is a California Corporation that was in business for more than ten years between 2005 and 2016. From February 2005 through June 2011, Global used "College Financial Advisory" ("CFA") as its d/b/a name. After June 2011, from 2012 through 2016, Global used the Student Financial Resource Center ("SFRC") as its d/b/a name.[5] Mr. Aria is the owner and registered agent of Global Financial Support, Inc., the President of CFA and the CEO of SFRC.[6]

Mr. Aria worked for National University in San Diego—the college he had previously attended from 1984 to 1989,—as the campus director and computer operator.[7] In these roles, Mr. Aria worked with financial aid counselors, instructors, and students.[8] Therefore, Mr. Aria had a great deal of first-hand knowledge about the student financial aid process when he started Global.

To connect with potential consumers, Global would mail out solicitation letters ("Letter(s)") to students and their families. Over the years of Global's existence, the Letter(s) evolved, but consistently included, in part, the following information. All Letter(s) stated:

> "Students who did *not* qualify to receive federal student aid (Pell Grants, FSEOG, or Work-Study) or students who need additional financial aid funding should apply to other existing free financial aid programs [plural]."[9]

---

[4] Pro Se Defendant Response to Plaintiff Consumer Financial Protection Bureau's Statement of Undisputed Facts in Support of its Motion for Partial Summary Judgment (hereinafter "Resp. UF").
[5] Am. Answer at 2:5–24, ECF No. 9; Aria Decl. ¶¶3, 34.
[6] Am. Answer at 3:23–25, ECF No. 9.
[7] Aria Decl. ¶38; OSJX F3 at 16:12–17:25.
[8] OSJX F3 at 16:12–17:25.
[9] OSJX A1–A6.

The purpose of this part of the Letter(s) was to make the point that Global is *not* FAFSA; rather, Global was there to help students learn about aid opportunities other than federal student loans.[10]

Global had its phone number, email, and website address prominently displayed on numerous areas of the Letter(s) and asked consumers to contact them by phone, email, or visit their website if they had questions or needed more information.[11] If consumers were at all unhappy with Global's services, they could contact Global and request to receive a full refund within ten business days[12] (less than .01% requested a refund).[13]

Importantly, the Letter(s) *never* claimed that Global was affiliated with the federal government or educational institutions, that Global offered aid directly to consumers, or that Global would apply for financial aid on *behalf* of consumers.[14] The Letter(s) also *never* stated or implied that Global's services were "individualized" for each particular consumer.[15] To ensure this was clear to consumers, Global's Letter(s) stated:

> "Student Financial Resource Center/College Financial Advisory has directly sent this letter to students and it *is not affiliated with any educational institutions or government agencies*." (emphasis added)[16]

The Letter(s) also directed consumers to Global's Website, where Global had an "About Us" page explaining what Global offers:

> "SFRC provides students with a comprehensive resourceful guidebook containing essential financial aid information, a list of free merit- and need-based financial aid programs, and clear instructions on how to apply to our specifically selected sources—all in one convenient, multipurpose package."[17]

---

[10] Aria Decl. ¶¶ 90.
[11] OSJX A1–A6.
[12] Aria Decl. ¶ 120.
[13] Aria Decl. ¶ 121.
[14] OSJX A1–A6; Aria Decl. ¶¶8a–e.
[15] Aria Decl. ¶¶8a, 87.
[16] OSJX A1–A6 (emphasis supplied).
[17] OSJX B1, B2.

Global's Website also had a "Frequently Asked Questions" page disclosing what Global is *not* and what Global *does not* do, such as:

**Is the Student Financial Resource Center (SFRC) organization affiliated with any educational institutions or government agencies?**
No. The Student Financial Resource Center (SFRC) is an independent organization and is not affiliated with any educational institutions, government agencies, or funding sources.

**Does SFRC submit any financial aid forms or applications on students' behalf to other financial aid organizations?**
No, SFRC does NOT submit forms or applications to other financial aid organizations. SFRC is an independent organization and is not affiliated with any educational institutions, government agencies, or funding sources.[18]

Attached to the mailed Letter(s) was a form ("Form(s)") that consumers could fill out should they choose to pay for Global's service. The Form(s) were the means by which consumers provided Global with sufficient information for Global to produce targeted Guidebooks for students. The Form(s) asked consumers to provide generic information, such as a student's race, gender, anticipated major, extracurricular activities, military status, parental employment, etc.[19]  Notably, the "Form(s)" did not request highly personalized information such as social security numbers, driver's license numbers, SAT scores, transcripts, wages, gross income, child support, or IRS income tax returns information.[20]

Most importantly, the "Form(s)" contained a certification section that had a clear and conspicuous full disclosure ("binding contract") that Global required all consumers to read, date, and sign. This disclosure was located *directly* above the signature line on the Form(s) and states that Global

"is unable to guarantee results and has no input into the decision as to which applicants will be selected to receive financial aid funds, *and it is not affiliated with any educational institutions, government agencies, or funding sources.*"[21] (emphasis added).

Consumers were instructed to mail their filled out Form(s)—along with the

---
[18] OSJX B1, B2.
[19] OSJX A1–A6; Aria Decl. ¶¶96, 107.
[20] Aria Decl. ¶96.
[21] OSJX A1–A6 (emphasis supplied).

processing fee (which ranged from $59–65 based on the year)—to Global, and then Global would create and mail the consumer a Guidebook with targeted scholarship and financial aid opportunities that the consumers could apply to themselves.[22] The discovery record contains fourteen examples of Guidebooks—over 4,500 pages of example Guidebook pages for this Court's reference.[23]

Globals Form(s) and Letter(s) also listed an internal deadline by which potential consumers had to mail in their Form(s) and payments if the wanted Global's Guidebook that year.[24] This deadline was necessary for Global's business purposes to close out marketing cycles. Because the majority of financial aid programs have strict deadlines with limited funding, Global too had to have a deadline by which it could provide consumers with information about the other programs and give consumers enough time to apply to those other programs.[25]

A prior (October 15, 2014), in-depth investigation of Global by the Washington State Attorney General Office ("AG") resulted in a finding of *absolutely no wrongdoing* on the part of Global or Mr. Aria.[26] The investigation lasted for nearly six months, after which the Washington Attorney General found no problems with Global's solicitation Letter(s), Form(s), Website, or any of its business practices.[27] On May 1, 2015, the Washington AG closed the investigation without asking Global to make changes to any aspect of its business.[28] Despite no findings of wrongdoing, Global still strived to improve its Materials to ensure clarity and transparency.[29] To see the evolution of the Form(s), Letter(s), and Website, *see* Exhibits OSJX A1–A6.

Furthermore, Global's minimal consumer rate, complaint-rate, and return-rate

---

[22] For instance, if a consumer indicated that they were female, interested in biology as a major, and member of their high school's Spanish race, the Guidebook would include financial aid opportunities and scholarships for women interested in science and people with Hispanic racial background.
[23] OSJX P1–P5; *see also* OSJX I2, I4.
[24] OSJX A1–A6.
[25] Aria Decl. ¶¶89–94.
[26] OSJX J6; *see also* OSJX J1–J6.
[27] *Id.*; Aria Decl. ¶¶75–78.
[28] OSJX J6; *see also* OSJX J1–J6.
[29] Aria Decl. ¶82; *see* OSJX A1–A6; OSJX B1, B2.

demonstrate that Global did not deceive its consumers:

**Consumer rate:** Merely 1.8% of all solicited consumers elected to fill out Global's Form(s) and pay for Global's service.[30] This means over 98% of potential consumers who received and read Global's Materials decided not to purchase Global's service. If "reasonable consumers" thought that Global was affiliated with the government or educational institutions, then surely more than 1.8% would have submitted Form(s).

**Complaint rate:** Only two consumers—two of the Bureau's fourteen, non-credible[31] witnesses (who both signed their declarations after the lawsuit had already commenced)—out of the 76,000 consumers who purchased Global's services during the relevant period said they believed Global was going to apply for financial aid on their behalf.[32] The Bureau mentions upwards of 200 complaints against Global from 2008 to 2015,[33] but out of the 3.9 million letters mailed to potential consumers during those seven years, and the 76,000 paying consumers, 200 is scant.[34] The majority of these complaints were filed by mere potential consumers that never even contacted Global or used Global's services.[35] At most, only .002% of solicited consumers filed complaints.[36]

**Refund request rate:** If consumers were at all unhappy with Global's services, they could contact Global and request to receive a full refund within ten business days.[37] From 2011–2015 Global procured, on average each year, approximately 152 refund requests.[38] Meaning on average each year less than .01% of paying consumers requested a refund, and all consumer refund requests were paid promptly and in full.[39]

Despite the minimal evidence of complaints against Global, as well as the exculpating investigation conducted by the Washington AG, the Bureau nonetheless

---

[30] Aria Decl. ¶14.
[31] The non-credibility of the Bureau's fourteen Witnesses is evinced in Mr. Aria's Decl. at ¶¶199–213.
[32] Aria Decl. ¶¶32, 205, 212 (re Mr. Paul Lee and re Ms. Welcher).
[33] Plaintiff's "Memorandum in Support of the Bureau's Motion for Partial Summary Judgment on the Bureau's Claims Against Defendant Armond Aria" (hereinafter "P. SJM") at 12:11–13:7.
[34] Aria Decl. ¶¶15.
[35] OSJX G8; Aria Decl. ¶172 (Mr. Aria did not receive notice of these complaints.).
[36] Aria Decl. ¶¶17, 158.
[37] OSJX A1–A6; OSJX B1, B2.
[38] Aria Decl. ¶19.
[39] *Id.*

brought this ill-conceived action and has sought partial summary judgment. The Court should either dismiss the Bureau's claims altogether or at least deny the Bureau's motion for summary judgment for the reasons set out *infra*.

**LEGAL ARGUMENT**

## I. Legal Standard

Summary judgment is only appropriate when the record—read in the light most favorable to the non-moving party—indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[40] Material facts are those facts that are necessary to prove or defend a claim and they are determined by referring to the applicable substantive law or defense of a claim.[41] In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[42] However, Summary judgment is *inappropriate* if a reasonable juror, drawing all inferences in favor of the nonmoving party, "could return a verdict in the nonmoving party's favor."[43]

To demonstrate the existence of a factual dispute, the opposing party does not have to establish a material issue of fact conclusively in its favor.[44] Rather, it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[45]

## II. The Bureau Lacks The Legal Authority to Bring This Lawsuit Against Global and Mr. Aria

Pursuant to 12 U.S.C. § 5531(a),[46] the Bureau only has the legal authority to take action to prevent a "covered person," "service provider," and/or "related person" from committing or engaging in unfair, deceptive, or abusive acts or practices in connection with

---

[40] Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).
[41] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).
[42] FTC v. Lights of Am. Inc., 2012 U.S. Dist. LEXIS 199754, *5-6 (citing *Anderson*, 477 U.S. at 255).
[43] Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing United States v. Shumway, 199 F.3d 1093, 1103-04 (9th Cir. 1999)).
[44] T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).
[45] *Id.*
[46] 12 U.S.C. § 5531(a).

any transaction with a consumer for a "consumer financial product or service…."[47]

The Bureau argues the following: that Global is a covered person under 12 U.S.C. § 5481(6)[48] or service provider under 12 U.S.C. § 5481(26)(A)[49]; that Global meets the legal definition and elements of 12 U.S.C. §5481 (15)(A)(viii) [50] needed to be categorized as consumer financial product or service provider[51]; and that Mr. Aria qualifies as a "related person."[52] As will be demonstrated, this argument is wholly without merit. The Bureau lacks the legal authority to regulate Global and Mr. Aria for the following reasons.

### A. Global is Not a "Service Provider"

Under 12 U.S.C. § 5481(26)(A) Global is not a "service provider" because it did not provide any material service in connection with the offering, or provision, of a "Consumer Financial Product or Service."[53]

#### 1. Global Does Not Provide "Consumer Financial Products or Services"

To provide "consumer financial services or products" means to provide financial advisory services or products that are either individualized or proprietary—excluding publications.[54] Contrary to the Bureau's allegations in its Complaint and Motion for Partial Summary Judgment ("the Motion"), Global did not provide "financial products or services" under the CFPA definition for the following reasons.

##### a. Mr. Aria and Global Did Not Provide "Individualized" Financial Advisory Services to Consumers

In Plaintiff's Motion, the Bureau states: "Defendants' solicitation offered to advise on the '*individual* financial matters' of student financial aid assistance and 'relating to proprietary financial products or services,' namely Global's proprietary 'program,' which offers student financial aid assistance."[55] (emphasis added). However, *nowhere* in Global's

---

[47] 12 U.S.C. § 5481(5).
[48] 12 U.S.C. § 5481(6).
[49] 12 U.S.C. § 5481(26)(A).
[50] 12 U.S.C. §5481 (15)(A)(viii).
[51] Cmpl. at 1, 5, 80, 90, ECF No. 1; P. SMJ at 16:9–17:13.
[52] Cmpl. at 1, 5, 80, 90, ECF No. 1; P. SMJ at 16:10–21; 17:1–13.
[53] *See infra section II.A.1.a–A.2.*
[54] 12 U.S.C. § 5481(15)(A)(viii).
[55] P. SMJ at 16:15–18.

Form(s) or Letter(s) or Website[56] does the word "individual" appear. This supposed "quote" is, in fact, a misquote. Rather, Mr. Aria himself declares that Global provides "group-level" financial aid information to consumers.[57] Global did promise to "individually match" students with financial aid programs or provide students with "individualized" Guidebooks.

Furthermore, Plaintiff's Motion takes the one mention of the word "target," out of context, and gives it a meaning that a reasonable person would not construe. The Bureau states in its motion: "The solicitation offered to use [] information to target and match students with individualized scholarship opportunities in exchange for a fee."[58] However, the Form(s) state that Global "will strive to provide as many targeted financial aid opportunities as possible to every student, regardless of his or her financial status or academic performance."[59] This statement is part of the disclosure statement—that also clearly advises the consumer that Global is not affiliated with the government or any educational institutions—right above the consumer signature line.[60]

The term "targeted" by no means signifies "individualized." The difference in word choice is clear in the Oxford Dictionary's definition of each term: "Targeted" (adjective): "aimed at a particular place or group of people."[61] "Individualized" (adjective): "designed for a particular person or thing; connected with a particular person or thing individualized instruction a highly individualized approach to management."[62] While Global and Mr. Aria promised to, and did, provide information targeted to a particular group of people—i.e., a particular class or type of consumer—, it did not provide information to consumers on an "individualized" basis.

---

[56] OSJX A1–A6; OSJX B1, B2.
[57] Mr. Aria declares this in his Admission Response, Interrogatory Responses, and in his Deposition. Aria Decl. ¶¶106, 108, 116–17; OSJX F1 (Mr. Aria's Response to Plaintiff's Interrogatories); OSJX F2 (Mr. Aria's Response to Plaintiff's Admission); OSJX F4 (Mr. Aria's Response to Plaintiff's Production).
[58] P. SMJ at 16:20–21.
[59] OSJX A1–A6.
[60] OSJX A1–A6.
[61] *Targeted*, OXFORD LEARNER'S DICTIONARY, https://www.oxfordlearnersdictionaries.com/us/definition/english/targeted.
[62] *Individualized*, OXFORD LEARNER'S DICTIONARY, https://www.oxfordlearnersdictionaries.com/us/definition/english/individualized?q=individualized.

In fact, providing "individualized" financial aid Guidebooks to each consumer was nearly impossible given the nearly two hundred million different types of Guidebooks that Global would have had to create.[63] What Global did was determine, based on the information provided by the consumer, what particular *group* the consumer fit into and sent consumers Guidebooks which it had developed for that particular group.[64]

The Bureau incorrectly states in their Motion that Global's Guidebooks "were not individualized or targeted to specific students."[65] While Mr. Aria does not dispute that the Guidebooks were not *individualized*—because Global never promised individualized Guidebooks in their Materials—Mr. Aria does dispute the allegation that the Guidebooks were not *targeted* since they were, in fact, targeted to particular groups or classes of consumers.

### b. Global Did Not Provide Proprietary Services

In its Motion, the Bureau simply refers to "Defendant's proprietary 'program,'" but never explains *why* it believes Global's Guidebooks are supposedly "proprietary."[66] This is because there is no way to do so. Global did not have or produce any trade secret, financial information, material, or products.[67] The Guidebook information was obtained from publicly available sources (e.g. books, articles, and World Wide Web).[68]

### c. Global Promised and Published General Information

Under 12 U.S.C. §5481 (15)(A)(viii), a business is not a "Consumer Product or Services" provider if it publishes information or recommendations that are not tailored to the *individual* needs of a particular consumer. Global published Guidebooks that were not

---

[63] Aria Decl. ¶107.
[64] Aria Decl. ¶¶116–17.
[65] P. SJM at 20:1–2.
[66] P. SJM at 16:15–18.
[67] *Proprietary Information Definition*, INC.COM ("Proprietary information, also known as a trade secret, is information a company wishes to keep confidential. Proprietary information can include secret formulas, processes, and methods used in production. It can also include a company's business and marketing plans, salary structure, customer lists, contracts, and details of its computer systems. In some cases, the special knowledge and skills that an employee has learned on the job are considered to be a company's proprietary information.").
[68] Aria Decl. ¶¶112, 116.

1    customized to the individual needs of a particular consumer; rather, were targeted to a

2    particular group or class of consumers.[69]

3    **B. Global is Not a "Covered Person" and Mr. Aria is Not a "Related Person"**

4    The term "covered person" includes "any person that engages in offering or

5    providing a consumer financial product or service."[70] "Related person" means  "any

6    director, officer, or employee charged with managerial responsibility for, or a controlling

7    shareholder of, or an agent for, a *covered person*."[71]  Global is not a "covered person"

8    because, as demonstrated above,[72] Global does not provide financial products or services.

9    And because Global is not a "covered person"[73] Mr. Aria cannot be a "related person."

10   For all the aforementioned reasons, Mr. Aria and Global are not subject to CFPA

11   regulations and the Bureau lacks the authority to take this legal action.

12   **III. Global and Mr. Aria Did Not Deceive Consumers**

13   If this Court is nonetheless unpersuaded that Mr. Aria and Global are not subject to

14   CFPA regulations, the Bureau still cannot prevail in its motion for partial summary

15   judgment because Bureau has not met its burden of proving that deception occurred. (**A**)

16   Numerous genuine disputes of material facts exist as to whether Global's sales practices

17   were "likely to mislead" consumers. And, at the very least, (**B**) whether Global offered

18   "financial advisory services" to consumers, and whether Global's Materials deceived

19   consumers, are both questions for a jury.

20   **A. Global's Sales Practices Were Not Likely to Mislead Consumers**

21   The CFPA prohibits covered persons from engaging in "any unfair, deceptive, or

22   abusive act or practice."[74] Courts, including the Ninth Circuit, have determined that the

23   standard for a CFPA deception claim is the same as the standard as that of section 5(a) of

24

25

26   [69] Aria Decl. ¶¶107, 116–17; *see also supra section II.A.1.a.*

27   [70] 12 U.S.C. § 5481(6).
     [71] 12 U.S.C. § 5841(25)(c)(i).
28   [72] *See supra*, section II.A.
     [73] *See supra* section II.A.
     [74] 15 U.S.C. § 5536(3).

the Federal Trade Commission Act,[75] which says that an act or practice is "deceptive" if it meets three requirements: (1) The act or practice must be a representation, omission, or practice that, (2) was likely to mislead consumers *acting reasonably under the circumstances*, and (3) the representation, omission, or practice was material.[76]

To determine whether a representation is likely to mislead consumers, courts look to the "net impression" created by the representation.[77] "An individual statement, representation, or omission is not evaluated in isolation to determine if it is misleading, but rather in the context of the entire advertisement, transaction, or course of dealing."[78] A court will not deem an act or practice to be "deceptive" at the summary judgment phase if the defendant can show that a genuine dispute of material fact(s) exists.[79]

The Bureau relies on blatant misquotations and misinterpretations of the Letter(s), Form(s), and Website to allege deception on each of the three Counts.[80] Thus there is indeed a dispute as to the contents of Global's Materials.

### 1. Count One of the Bureau's Complaint is Factually Unfounded Because Global Did Not Offer to Apply for Financial Aid on Behalf of Consumers, Nor Did it Offer its Own Financial Aid or Scholarships

Global never represented that it would provide financial aid directly to consumers or that it would apply for financial aid on consumers' behalf.[81] In Global's ten years of

---

[75] *See Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1192-93, n. 7 (9th Cir. 2016); *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.*, ____ F.Supp.3d.____, 14–cv–2211, 2015 WL 4282252, at *20 (N.D.Ga. July 4, 2015). *See also Consumer Fin. Prot. Bureau v. ITT Educ. Servs., Inc.*, ____ F.Supp.3d ____, 14–cv–292, 2015 WL 1013508, at *17–20 (S.D. Ind. Mar. 6, 2015), appeal docketed, No. 15–1761 (7th Cir. Apr. 8, 2015) (longstanding interpretations of the Federal Trade Commission Act should inform interpretation of the CFPA).

[76] FTC v. Stefanchik, 559 F.3d 924, 928 (9th Cir.2009) (quoting *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir.2000)) (emphasis added).

[77] FTC Statement on Deception, 103 F.T.C. 174, 175 (1984) (appended to Cliffdale Assocs., Inc., 103 F.T.C. 110 (1984)) ("In determining whether an advertisement, including its format, misleads consumers, the Commission considers the overall 'net impression' it conveys."); *Gordon*, 819 F.3d at 1193.

[78] *UDAAP*, CFPB CONSUMER LAWS AND REGULATIONS (Oct. 2012), https://www.cfpaguide.com/portalresource/Exam%20Manual%20v%202%20-%20UDAAP.pdf.

[79] *See* CFPB v. Morgan Drexen, Inc. 2014 WL 12581776, Case No. SACV 13-1267-JLS (JEMx), at *7 (C.D. CA 2014) ("[S]tatements made in the advertisements that someone 'could' or has the 'opportunity' to become debt-free do not necessarily suggest that someone 'will' become debt free or that any guarantees are being made."); *see also FTC v. Connelly*, 2006 U.S. Dist. LEXIS 98263, at *26, 35–40 (C.D. CA 2006) (denying FTC's summary judgment motion on the issue of section 5(a) deception because, although the defendant did not settle 100% of its clients debts, they did so for about 40–60% of clients, and that ratio of potential deceptiveness was a matter for the jury).

[80] *See, e.g.*, Aria Decl. ¶¶199–213 (declaring a list of each quote the Bureau fabricated in its Motion).

[81] Aria Decl. ¶¶8c, 31, 101b.

---

12

operation, Global was not aware of a single consumer complaint alleging that Global promised to apply for financial aid on their behalf.[82]

The Bureau falsely states in its Motion that "[d]efendants represented to consumers that they would provide a 'program' through which consumers could apply for financial aid or through which Defendants would apply for financial aid on their behalf."[83] This, however, is simply false. None of the versions of the Letter(s), Form(s), or Website ever promised to apply for student aid on behalf of its consumers or provide direct financial aid money to consumers.[84] Global's Form(s), Letter(s), and Website even included language explicitly stating that Global *does not* apply for aid on behalf of, or provide aid directly to, consumers.[85] A "reasonable consumer" would not read something into the text that simply does not exist. To the contrary, a "reasonable consumer" would have known that if Global were to be applying on behalf of the consumer for federal financial aid, Global would have asked for a lot more detailed information, such as, for example, the student's Social Security number,[86] which it did not.[87]

Global's Letter(s) and Form(s) also did not indicate to a reasonable consumer that filling out Global's Form(s) would "enroll" the consumer in Global's "program."[88] Global

---

[82] The first time global heard any allegation of this sort was when they received a letter from Ms. Julien Brown, a manager from the Better Business Bureau. Ms. Brown's letter, however, was supported by absolutely no evidence of such consumer complaints. *Aria Decl. ¶31.* The second time Global heard the allegation that a consumer though Global would apply for financial aid on consumers' behalf was when it read declarations from two of the Bureau's Witnesses. *Aria Decl. ¶32.* The first declaration was from Mr. Paul Lee, who lied about filling out Global's Form and receiving a Guidebook. *Id.* Mr. Lee also did not make this allegation until after the lawsuit had commenced (the lawsuit commenced on October 29, 2015 and Mr. Lee's declaration is signed November 27, 2015). *Id.* Mr. Lee had previously filed an FTC Sentinel complaint—in which he did not make the same allegation as his declaration—but this complaint is not in the record. *Id.* The second declaration was from Ms. Lori Welcher, who also did not make this allegation until after the Bureau commenced this lawsuit (Ms. Welcher signed her declaration on January 14, 2016). *Id.* Ms. Welcher had previously filed a complaint with the BBB (on July 15, 2014), in which she never alleged that she thought Global would apply for aid on her behalf. *Id.*
[83] P. SJM at 18:7–10; 9:13–15.
[84] OSJX A1–A6; OSJX B1, B2; Aria Decl. ¶¶8c, 24.
[85] The following information was published on Global's Website under the "Frequently Asked Questions (FAQ)" link: "Q. Does Global submit any financial aid forms or applications on students' behalf to other financial aid organizations?  A. No, Global does NOT submit forms or applications to other financial aid organizations. Global is an independent organization and is not affiliated with any educational institutions, government agencies, or funding sources." *OSJX B1, B2.*
[86] *Your Social Security Number*, STUDENT AID.GOV, https://studentaid.gov/help/social-security-number ("You must enter your Social Security Number (SSN) to be considered for federal student aid."); *see* OSJX A1–A6.
[87] Indeed, it would be almost impossible for a small company like Global to apply for financial aid on behalf of 15,000 consumers annually—especially when taking into account the fact that each student could apply for anywhere from ten-to-thirty-plus scholarships, which means Global would have had to fill out 300,000 applications annually. OSJX I4.
[88] Aria Decl. ¶¶23, 27.

13

never uses the word "enroll" anywhere in its Letter(s), Form(s), or on its Website.[89] In reality, Global clearly explained to consumers that it conducted its own extensive research on other existing external financial aid programs (plural).[90] After its research, Global selected specific external financial aid programs (plural) and listed them in their Guidebooks and directed its paying consumers to apply to them.[91]

Global's Letter(s) only mention Federal Financial Aid Program**s** (plural) for the specific purpose of distinguishing them from the service that Global provides to consumers.[92] All of Global's Letter(s) state that "Students who did *not* qualify to receive federal student aid (Pell Grants, FSEOG, or Work-Study) or students who need additional financial aid funding should apply to other existing free financial aid programs [plural]."[93] The entire purpose of this part of the Letter(s) is to make the point that Global is *not* FAFSA[94] and can inform students how to get aid in ways other than federal student loans.

And while Global does indeed need to "process" consumer Form(s) to deliver the consumer the appropriate Guidebook,[95] merely mentioning the word "process" would not lead a "reasonable consumer" to automatically think that this means Global would be *applying* for financial aid on their behalf. Only two—not, as falsely alleged, eleven—of the Bureau's fourteen, non-credible, government-procured Witnesses alleged this out of the entire 76,000 total consumers who utilized Global's services.[96]

The Bureau also erroneously takes issue with the "student profile number" that Global assigns to consumers.[97] This number, which appears at the top of the Form(s) and Letter(s), is a necessary number by which Global organizes and keeps track of its

---

[89] OSJX A1–A6; OSJX B1, B2.
[90] Programs such as: "Federal Financial Aid Programs[,] State Financial Aid Programs[,] Need-Based and Merit-based Financial Programs[,] Minority Financial Aid Programs[,] Employer Financial Aid Programs[,] Private Financial Aid Programs[, and] Other Scholarships and Sources Financial Aid Programs." *OSJX A1–A6.*
[91] Aria Decl. ¶¶112, 118;.
[92] *See, e.g.,* Aria Decl. ¶90; *see also* OSJX A1–A6.
[93] OSJX A1–A6 (emphasis added).
[94] The FAFSA is an eight-to-ten-page application that asks for information such as Social Security Number, Driver's License Number, Tax returns, Detailed Financial information, etc., while Global's Form(s) are two pages and merely ask for general information. *Compare OSJX S1*, *with OSJX A1–A6.*
[95] Aria Decl. ¶122.
[96] Aria Decl. ¶¶ 205, 212 (re Mr. Paul Lee and re Ms. Welcher).
[97] P. SJM at 6:4–16.

consumers.[98] Furthermore, this number is entirely different from that of FAFSA, which requires students to create their unique usernames and passwords as well.[99] The FAQ section of Global's Website also explains that Global does not submit financial aid forms or applications on students' behalf.[100]

### 2. Count Two is Unfounded Because Global Did Not Promise to Provide "Individualized" Financial Advisory Services

Global never promised to provide "individualized" Guidebooks—to do so would have been impossible given the upwards of two million versions that would have been needed. Global did, however, promise to provide "targeted" financial aid information to consumers.[101] As discussed above in Section II.A.1, "targeted" and "individualized" are not synonymous. Therefore, a "reasonable consumer" would not read Global's Form(s) and Letter(s) and believe that their Guidebook would be individualized, just for them.

Nowhere in its Materials does Global use the word "individualized," yet the Bureau misstates that Global "offered to use [the information from the Form(s)] to target and match students with *individualized* scholarship opportunities in exchange for a fee."[102]

In its Motion, the Bureau discusses Mr. Aria's supposed unwillingness to explain how guidebooks were created. This is wildly exaggerated because Mr. Aria *did* explain how the Guidebooks were created multiple times: in his Response to the Washington[103] and Iowa[104] investigations, in his Answer,[105] four times in his Interrogatory Response,[106] three times in Mr. Aria's Admission Response,[107] and during his Deposition.[108] The Bureau further alleges that the Guidebooks "were mostly copies of information from other

---

[98] Aria Decl. ¶¶101f, 123.

[99] OSJX, S2, S3.
[100] OSJX B2.
[101] *See supra section* II.A.1.a.
[102] P. SJM at 16:20–21 (emphasis added).
[103] OSJX J4.
[104] OSJX I3.
[105] Am. Answer at 32:5–33:18, ECF No. 9.
[106] OSJX F1 at 7.
[107] OSJX F2 at, e.g., 6–7.
[108] OSJX F3 at 51:25–25.

sources."[109] This is simply false, as Global conducted extensive research compiling information from a myriad of sources to create Guidebooks that were rich with accessible information for consumers.[110]

In its Motion, the Bureau alleges that some of the Guidebooks were photocopied and that they did not contain some of the information that consumers were expecting.[111] However, the two Guidebooks the Bureau relies on for this allegation are from two consumers that did not want to wait to receive a Guidebook and instead requested a refund. Global refunded both consumers and still sent two complimentary partial and incomplete Guidebooks to them.[112] These Guidebooks do not reflect what a typical consumer Guidebook looks like.

### 3. Count Three is Unfounded Because the Deadline Was a Legitimate, Necessary Part of Global's Business Practices

Global's deadline was a necessary business tool to close its marketing cycle and consumer contracts.[113] Global indicated to consumers that other financial aid programs (plural) have a strict deadline but never indicated that not Global's program (singular) had a deadline by which it would provide consumers with financial aid or apply on behalf of consumers.[114] Therefore, Global did not misrepresent the deadline before which students must apply to Global to be notified of financial aid opportunities. More details about why the deadline was a necessary business tool are specified in, *supra*, Section III.A.3.

Moreover, in the Bureau's Motion, it falsely emphasizes the "Filing Status" and "Filing Deadline" boxes on Global's Form(s).[115] The Bureau enhanced the size of these boxes, thus making them seem more prominent than they were in reality.

Thus, Global's Materials were not likely to deceive consumers as alleged in Counts I,

---

[109] P. SJM at 10:15–16.
[110] Aria Decl. ¶¶112, 118. Each financial aid opportunity listed in consumers' Guidebooks includes information about the aid opportunity's name, description, website, and qualifications needed to apply to it. *See, e.g.* OSJX I1, I4; OSJX P1–P5.
[111] *See* P. SJM at 11:2–13.
[112] Aria Decl. ¶110.
[113] Aria Decl. ¶¶89, 93.
[114] Aria Decl. ¶¶90, 91.
[115] P. SJM at 9:3–17.

II, and III. And, at the very least, there are many genuine disputes of material fact.[116]

### 4. Global Did Not Claim to be Affiliated with the Federal Government or Educational Institutions

Nowhere in any of Global's Form(s), Letter(s), or Website is that Global is affiliated with the federal government or educational institutions.[117] In fact, Global's materials and Website clearly explained that Global is *not* affiliated with any governmental agencies or educational institutions, that Global is *not* affiliated with the FAFSA, and that Global itself is *not* a loan provider.[118] The Form(s) also explain that Global is "unable to guarantee results and has no input into the decision as to which applicants will be selected to receive financial aid funds, and it is not affiliated with any educational institutions, government agencies, or funding sources."[119] Additionally, Global's logo is significantly different from that of educational institutions and the Federal Department of Education logo.[120]

### 5. Consumers Consented to a Contract with Global

There are four requirements for the formation of a contract: (1) a lawful object, (2) an offer, (3) an acceptance, and (4) "consideration."[121] Global's Form(s) and Letter(s) constituted an "offer," the object of which is a lawful service. By signing the Form(s), consumers accepted Global's offer. By consumers paying the fee and Global tendering the Guidebooks, both parties provided consideration. Thus, contracts were formed.

Parties to a contract have a duty to read their contract and are generally bound by its terms even if they did not read it.[122] A reasonable person will read the provisions of a

---

[116] *See, e.g.,* Aria Decl. ¶¶8a-e, 33–48; *see generally* Resp. UF.
[117] OSJX A1–A6; OSJX B1, B2.
[118] OSJX A1–A6; OSJX B1, B2.
[119] OSJX A1–A6.
[120] OSJX C18; Aria Decl. ¶¶130–45.
[121] Cal. Civ. Code § 1550.
[122] Newton v. Am. Debt Servs., Inc., 854 F. Supp. 2d 712, 721–22 (N.D. Cal. 2012), *aff'd*, 549 Fed.Appx. 692 (9th Cir. 2013) (holding duty to read doctrine foreclosed challenge to formation where arbitration provision printed on the reverse side of a single page contract was incorporated by reference on the face page plaintiff signed); Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc., 89 Cal. App. 4th 1042, 1047 107 Cal. Rptr. 2d 645, 650 (2001), as modified (June 8, 2001) (noting "[t]he clause immediately above the customer's signature states, 'This is a contract which includes all terms and conditions stated on the reverse side' " and deciding, "[t]here is simply no basis for a conclusion that the document was unrecognizable as a binding contract."); Rodriguez v. Am. Techs., Inc., 136 Cal. App. 4th 1110, 1123–24, 39 Cal. Rptr. 3d 437, 446–447 (2006).

contract and is bound by clear and conspicuous provisions.[123] This duty to read binds the signing party to the contract unless it contains unusual or unfair language, which the preparing party must explain.[124]

No such unfair or unusual language exists in Global's Form(s). Rather, Global's Form(s) ensures that consumers are not misled by stating—*directly* above the signature line on the Forms(s)—that Global "is not affiliated with any educational institutions, government agencies, or funding sources."[125] Therefore, consumers who read the Form(s) and Letter(s) would have been aware that Global was not affiliated with the federal government, did not offer aid itself, and would not apply for aid on behalf of students.

### 6.  Additional Evidence—Conveniently Omitted by the Bureau—Demonstrates That No Deception Occurred

#### a. Prior Investigations Found that Mr. Aria Did Not Engage in Any Wrongdoing

Global's business practices have already been investigated by multiple states and deemed legitimate and non-deceptive.[126] The Washington AG conducted a thorough investigation of Global, found that Global was doing nothing wrong and did not ask Global to change any of its Materials.[127] The Bureau's current suit was *already disproved* in 2014.

Global was also investigated by the Iowa AG, which resulted in a compromise (an Assurance of Voluntary Compliance[128]), wherein no guilt was admitted or found on the part of Global or Mr. Aria. Despite no findings of deception in the Washington or Iowa CID investigations, Mr. Aria still worked to improve Global's Materials to ensure clarity and transparency for its consumers.[129]

---

[123] Malcom v. Farmers New World Life Ins. Co., 4 Cal.App.4th 296, 304, fn. 6, 5 Cal.Rptr.2d 584 (1992) (citations omitted); *see* Fields v. Blue Shield of California, 163 Cal.App.3d 570, 578, 209 Cal. Rptr. 781 (1985).

[124] Rosenfeld v. JPMorgan Chase Bank, *N.A.*, 732 F. Supp. 2d 952, 965 (N.D. Cal. 2010); *see also* Employee Painters' Trust v. J & B Finishes, 77 F.3d 1188, 1192 (9th Cir.1996) (party who signs a written agreement even without reading it is bound by its terms).

[125] OSJX A1–A6.

[126] *See section* II.A.I.

[127] OSJX J1, J2, J3.

[128] OSJX I1. Mr. Aria's attorneys advised him to take this deal for economic reasons: because Global did not do much business in Iowa anyways and the cost in attorney's fees for further investigation would have been highly expensive. *Aria Decl.* ¶80.

[129] OSJX A1–A6.

Because of these prior investigations, the Bureau also grossly mischaracterizes Mr. Aria as a "recidivist."[130] This is not true because of the above exculpatory investigations[131] and because Mr. Aria has worked hard to improve Materials through the years. Mr. Aria demonstrated great dedication to maintaining consumer trust and clarity.

### b. The Bureau's Fourteen, Disgruntled Witnesses are Not Credible

In an attempt to bolster their already baseless claims, the Bureau procured fourteen,[132] disgruntled past consumers that had previously filed fictitious complaints against Global.[133] As demonstrated in paragraphs 199 through 213 of Mr. Aria's Declaration, each and every one of the Bureau's fourteen Witnesses' statements contains [a] false or fabricated statement[s][134] and are, therefore, not credible.

Notably, none of the Witnesses ever mention that they signed Global's Form(s), raising a real question as to whether they were even *bona fide* Global customers. And, most importantly, Plaintiff's fourteen, disgruntled Witnesses surely cannot speak for the over 76,000 consumers who paid for Global's Guidebooks over the years.

### c. Global's Low Complaint Rate and Refund Request Rate Demonstrate that Global and Mr. Aria Did Not Deceive Consumers

Global's low complaint rate (less than .002%) and refund request rate (less than .01%) are explained in full in the Background and Facts Section, *supra*.

### d. The Number of Better Business Bureau Complaints are Minimal

Global did not discover a single complaint to the BBB alleging that consumers thought Global would apply for financial aid on behalf of students.[135] Only Ms. Julien Brown, who was the Director of Operations at the BBB (not a consumer), wrote a letter to Global alleging that Global does not submit Form(s) on students' behalf in a timely manner.[136] However, Ms. Brown's letter was not supported by any evidence that such

---

[130] P. SJM at 25:12–12.
[131] *See section II.A.1.*
[132] One Witness, Mr. Michaelson, is now deceased.
[133] Aria Decl. ¶¶185–213.
[134] *See also* Aria Decl. ¶¶199–213.
[135] Aria Decl. ¶¶31, 156, 161.
[136] OSJX G1; Aria Decl. ¶¶31, 146, 147, 163, 164.

19

complaints had ever been filed with the BBB.[137] Further, contrary to the Bureau's fabrication that "[t]he BBB withdrew CFA's accreditation,"[138] CFA was never accredited by the BBB, so the BBB could not possibly have withdrawn its accreditation.[139]

From 2011–2015, Global had approximately, on average, twenty Better Business Bureau complaints per year (over 30% of which did not even purchase Global's services).[140] Meaning on average each year less than .002% of paying consumers filed a BBB complaint against Global.[141] The Bureau also stated that "From January 2008 to October 2015, over 175 consumers filed complaints about Global's solicitations with the Better Business Bureau (BBB)."[142] However, the relevant period for the present case is July 2011 through October 2015, so all 175 of these complaints are not at issue. Additionally, the Bureau only provided 106 of these complaints during discovery. But even if we were to consider all 175, out of the approximately 76,000 consumers that purchased Global's services,[143] the highest the complaint rate could be is .002%.[144] This minimal percentage does not demonstrate deception. At the very least, this is a question for a jury to decide.

### e. The Bureau Exaggerated the Number of Sentinel Complaints

Not a single consumer complaint has been published on the Bureau's Consumer Complaint Database against Global or Mr. Aria.[145] In its motion, the Bureau inserted a two-page inaccessible and unauthenticated (see, *infra*) screenshot that says 230 records were found on the Federal Trade Commission's complaint database (the "Sentinel") when searching for "college financial advisory" and "student financial resource center."[146] This "230" number is wildly different from the mere 63 Sentinel complaints that the Bureau

---

[137] Aria Decl. ¶¶31, 146, 147, 163, 164. Because no consumer complaints had been filed with the BBB when Ms. Brown wrote her letter to Global, it would have been impossible to provide factual support for her erroneous complaint. *Id.*
[138] P. SJM at 13:9–10.
[139] Aria Decl. ¶160.
[140] Aria Decl. ¶¶157, 159
[141] Aria Decl. ¶¶158.
[142] P. SJM at 13:8–9.
[143] Aria Decl. ¶158.
[144] 76,000 divided by 175 equals .002.
[145] *See* CONSUMER FINANCIAL PROTECTION BUREAU, *Consumer Complaint Database*, http://www.consumerfinance.gov/complaintdatabase/.
[146] P. SJM at 12:17–20; Aria Decl. ¶¶169.

provided during discovery—of which 17 were from before the relevant time period (2009 and 2010). The majority (approximately 70%) of the 67 complaints sent to the Bureau were from *potential* consumers, not *paying* consumers.[147] Before taking this legal action, the Bureau had not even bothered to notify Mr. Aria of the Sentinel complaints against Global—about which he had no way of knowing because the Sentinel is a government, not public, database.[148] Mr. Aria could have made efforts to work with the Bureau and modify his Materials further had he known about these Sentinel complaints.[149]

### f. Complaints from Colleges Were Unfounded and Often Rescinded

Plaintiff also states: "Consumers also complained to colleges and universities, many of which posted public warnings calling what Defendants offered a 'scam.'"[150] However, none of the schools ever contacted Global before posting the patently false "warnings" on their websites.[151] Global was forced to send over fifty cease-and-desist letters to such schools, 95% of which subsequently removed the "warnings" from their website.[152] There are two letters in the discovery record from attorneys representing Texas A&M University and the University of Wisconsin-Stevens Point, stating that the schools would remove the false "warnings" from their websites and send emails to students to clear Global's name.[153] Also in the discovery record is a letter from the Office of the Attorney General of State of Minnesota representing Minnesota University and stating that they would remove the false "warning" about Global from their website."[154]

### g. Plaintiff's Evidence for Some of the Alleged "Complaints" is Inadmissible

The Bureau uses screenshot exhibits to allege that the Sentinel (the FTC Complaint Database) received 230 complaints about Global,[155] and that 23 colleges had/have

---

[147] Aria Decl. ¶170.
[148] Aria Decl. ¶172.
[149] *Id.*
[150] P. SJM at 14:4–5; *see* OSJX L; OSJX M.
[151] Aria Decl. ¶¶173–74; *see* OSJX L; OSJX M.
[152] Aria Decl. ¶175, 176; OSJX N1, N2.
[153] OSJX O1 (Texas A&M University); OSJX O3 (University of Wisconsin-Stevens Point).
[154] OSJX O2 (Minnesota State University).
[155] Aria Decl. ¶¶173–79.; P. SJM at 12:17–20.

"warning" postings on their websites about Global.[156] However, the Sentinel screenshot and 9 of the 23 college's "warning" screenshots have not been authenticated.[157]

The Ninth Circuit has "repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment."[158] Screenshots of web pages "may be authenticated by a person's testimony that he is familiar with the online content and that the exhibits are in the same format at the online content."[159] However, this person's testimony must still "describe[e] the process by which the webpage was retrieved."[160]

None of the Declarations provided by Plaintiff to authenticate their exhibits mentioned the "screenshot" (or "PrintScreen") of the supposed 230 Sentinel complaints[161]—therefore, these are unauthenticated and should not be considered for summary judgment. And while Zelinsky's Declaration testifies to the authenticity of 14 of the 23 school's "warning" postings, 11 of those 14 no longer exist and 8 are from outside the relevant time period of this suit.[162] Thus, at most, 6 of the school "warning" posting screenshots have been authenticated by the Plaintiff. *See* Mr. Aria's response to all "warnings" in his Declaration, where he demonstrates why each is unfounded.[163]

### h. Mr. Aria has Provided Sufficient Examples of the Guidebooks

In its Motion, the Bureau falsely states that Mr. Aria "could not produce any examples of the actual [Guidebooks] that were mailed to consumers."[164] However, the fact is that Mr. Aria did send the Bureau six sample Guidebooks during discovery (these were the same Guidebooks that Mr. Aria sent to the Washington and Iowa Attorney Generals' Offices during those CID investigations).[165] Mr. Aria was also aware that three actual

---

[156] Aria Decl. ¶¶173–79; OSJX L; OSJX N1, N2; OSJX M.

[157] OSJX M.

[158] Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).

[159] Iglesia Ni Cristo v. Cayabyab, No. 18-CV-00561-BLF, 2019 WL 3997474, at *4 (N.D. Cal. Aug. 23, 2019) (quoting *United States v. Needham*, 852 F.3d 830, 836 (8th Cir. 2017)).

[160] Fed. R. Evid. 902, Advisory Committee Notes to 2017 Amendments at ¶ 5.

[161] OSJX Q1 (Goodwin Declaration); OSJX Q2 (Zelinsky Declaration); OSJX Q3 (Thomas Declaration).

[162] *Id.*; *see* Aria Decl. ¶179.

[163] Aria Decl. ¶¶173–83.

[164] P. SJM at 11:14–14; 12:1–1.

[165] Arial Decl. ¶¶50, 56.

consumers' Guidebooks he had previously sent to the Iowa Attorney General were turned over to the Bureau and are in the present case's discovery record.[166] Thus, there are nine Guidebooks—over 4500 of Guidebook pages—already in the record.[167]

**B. The Question of Whether Any Deception Occurred is a Question for the Jury**

If the Court is not fully persuaded that Global and Mr. Aria are not subject to the CFPB's regulations, or that the Bureau failed to meet the legal standard required for a "deceptive sales practices" claim, this Court nonetheless should find that the question of deception is one for a jury.

In *Jeter v. Credit Bureau, Inc.*,[168] the Eleventh Circuit stated: "[W]e are confident that whether the 'least sophisticated consumer' would construe Credit Bureau's letter as deceptive is a question for the jury."[169] In *FTC v. Connelly*, the court denied the FTC's motion for summary judgment on the issue of deception the issues were for a jury to decide.[170] FTC brought suit because defendant Connelly's debt negotiation business and website suggested that the business would successfully negotiate or reduce clients' debt, but the business did not do so for 100% of its clients.[171] The court, however, was not persuaded that deception had legally/certainly occurred. The court reasoned that although the defendants did not solve 100% of their customers' debts, they did solve about 40-60%, and it was not clear that a reasonable person would have been misled by the text on the defendant's website.[172] Thus, similar to *Jeter* and *Connelly*, the question of whether Global's Materials deceived consumers is ripe for a jury, not summary judgment.

**V. The Bureau is Not Entitled to Adverse Inferences Against Mr. Aria**

Throughout its Motion, the Bureau references Mr. Aria's invocation of his Fifth Amendment Privilege during his Deposition.[173] Using Mr. Aria's invocation of his privilege

---

[166] Arial Decl. ¶¶79, 114.
[167] OSJX P1–P5.
[168] 760 F.2d 1168 (11th Cir. 1985)
[169] *Id.* at 1177–78.
[170] 2006 U.S. Dist. LEXIS 98263, at *55 (C.D. CA 2006).
[171] *Id.* at *26.
[172] *Id.* at *35–40.
[173] P. SJM at 19:19–19; 20:1–7; 15:15–15.

1    to draw adverse inferences is inappropriate for multiple reasons.

2         Mr. Aria had a good faith reason to invoke his Fifth Amendment Privilege, and he

3    explained this in his motion in "Opposition to Plaintiff's Notice and Motion to Compel

4    Discovery; to Determine the Sufficiency of Objections to Requests for Admissions; and to

5    Amend the Scheduling Order."[174] Due to an ongoing criminal IRS investigation, and the

6    fact that it was a "coordinated effort" between the CFPB, IRS, and FBI, the current civil

7    proceeding implicated Mr. Aria's Fifth Amendment rights to a significant degree.[175] Mr.

8    Aria had supported reason to believe that information he divulged to the CFPB would be

9    shared with government investigators on his criminal case.

10        In civil proceedings "adverse inferences can be drawn from a party's invocation of

11   this Fifth Amendment right."[176] However, the Ninth Circuit has ruled that it is not always

12   appropriate to permit such adverse inferences in civil proceedings: "this court has held that

13   there are certain limits on when a court in a civil case may give an adverse inference

14   instruction that accompanies a witness's invocation of the Fifth Amendment."[177]

15   Specifically, courts should "analyze each instance where the adverse inference was drawn,

16   or not drawn" and the "competing interests of the party asserting the privilege, and the party

17   against whom the privilege is invoked must be carefully balanced."[178]

18        After weighing the interests of each party here, the balance comes out in favor of Mr.

19   Aria. (1) The Bureau does not have an interest in obtaining the requested information from

20   Mr. Aria orally because they *already* have access to that very information. Mr. Aria had

21   previously described how the Guidebooks were created and what was meant by "group-

22   level" versus "individualized" in his response to the Bureau's Interrogatories and in his

23   Admission.[179] The Bureau could have accessed the Guidebooks by merely collaborating

24

25

26   ---
     [174] Defendant Oppos. to Compel Motion, ECF No. 94.
27   [175] Order Granting Stay at 6, ECF No. 34.
     [176] *See* SEC v. Colello, 139 F.3d 674, 677 (9th Cir.1998).
28   [177] S.E.C. v. Jasper, 678 F.3d 1116, 1125 (9th Cir. 2012).
     [178] S.E.C. v. Jasper, 678 F.3d 1116, 1125 (9th Cir. 2012).
     [179] OSJX F1, F2, F3.

with the Washington State Attorney General or Iowa Attorney General offices.[180] (2) Mr. Aria had an interest in not verbally explaining his definition of keywords or phrases from the Bureau's Complaint (i.e. "individualized" and "group-level") without an attorney present and without having been prepared by an attorney.[181] Mr. Aria used his best judgment during his Deposition and decided to not answer, especially when he had already answered the Bureau's exact questions previously[182]

More importantly, the Guidebooks have been re-provided (OSJX I2, OSJX I4 and OSJX J4) to prevent any negative inferences and ensure that the Court has a clear, untainted picture of what the Guidebooks look like and the information provided to consumers.

Overall, Plaintiff has alleged "facts" as being undisputed that Defendant in fact disputes (48 of 67 to be exact).[183] And these disputed facts are highly material to the case because they affect and speak to the relevant legal standard and legal bases for the claim of deception. Summary judgment is therefore not appropriate here.

## CONCLUSION

For the foregoing reasons, the Court should either dismiss the Plaintiff's claims entirely or deny Plaintiff's motion for Partial Summary Judgment.


Respectfully submitted,

/s/ Armond Aria
Armond Aria (Pro Se Defendant)
8650 Genesee Ave.
Suite 214 - Box# 928681
San Diego, CA 92122
Tel: (858) 314-9777
**Email: ariaarmond@gmail.com**

Dated: September, 24 2020

---

[180] However, again, the Guidebooks have been re-provided (OSJX P1–P4) to prevent any negative inferences and ensure that the Court has a clear, untainted picture of what the Guidebooks look like and the information provided to consumers.
[181] Aria Decl. ¶29.
[182] Aria Decl. ¶30.
[183] *See* Resp. UF.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on  September 24,  2020 I electronically filed the foregoing document via ECF and that service was perfected on all counsel of record through email.

<u>/s/ Armond Aria</u>
Armond Aria (Pro Se Defendant)
8650 Genesee Ave.
Suite 214 - Box# 928681
San Diego, CA 92122
Tel: (858) 314-9777
**Email: <u>ariaarmond@gmail.com</u>**