JOHN C. WELLS, DC Bar 491292
Deputy Enforcement Director
JAMES T. SUGARMAN, WSBA 39107
Assistant Litigation Deputy
NINA H. SCHICHOR, MD Bar (no assigned number)
(E-mail: nina.schichor@cfpb.gov)
(Phone: 202-435-9770)
AMANDA C. ROBERSON, MN Bar 0398511
(E-mail: amanda.roberson@cfpb.gov)
(Phone: 202-435-9447)
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

Attorneys for Plaintiff
Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

Consumer Financial Protection Bureau,

Plaintiff,

v.

Global Financial Support, Inc., d/b/a Student Financial Resource Center, d/b/a College Financial Advisory; and

Armond Aria a/k/a Armond Amir Aria, individually, and as owner and CEO of Global Financial Support, Inc.;

Defendants.

Case No. 15-cv-02440-GPC-AHG

**Reply in Support of the Bureau's Motion for Partial Summary Judgment on the Bureau's Claims Against Defendant Armond Aria**

Date: December 11, 2020
Time: 1:30pm
Crtrm: 2D
Judge: The Hon. Gonzalo P. Curiel

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ..... iii

I. There is no genuine dispute about the material facts supporting the Bureau's summary judgment motion ..... 1

A. The Court Has Authority to Grant Summary Judgment on Deception Claims and the Bureau has Established Deception Here ..... 1

B. Defendants are Covered Persons and Aria is a Related Person ..... 3

C. Aria Fails to Provide Any Cognizable Evidence to Demonstrate a Genuine Dispute of Material Fact ..... 5

D. Aria's Other Arguments Lack Bases in the Law ..... 7

1. Authentication ..... 7

2. Adverse Inference ..... 8

3. Statute of Limitations ..... 10

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Kraft*,
No. 10-cv-00602, 2011 WL 5076528 (N.D. Cal. Oct. 25, 2011) ........ 8

*Arellano v. Cty. of San Diego*,
No. 3:14-CV-2404, 2020 WL 4921983 (S.D. Cal. Aug. 21, 2020) ........ 6

*Bhan v. NME Hosps., Inc.*,
929 F.2d 1404 (9th Cir. 1991) ........ 1

*CFPB v. Access Funding*,
270 F .Supp. 3d 831 (D. Md. Sept. 13, 2017) ........ 5

*CFPB v. Gordon*,
819 F.3d 1179 (9th Cir. 2016) ........ 2, 10

*CFPB v. ITT Ed. Servs., Inc.*,
219 F. Supp. 3d 878 (S.D. Ind. 2015) ........ 4

*Coca-Cola Co. v. Overland, Inc.*,
692 F.2d 1250 (9th Cir. 1982) ........ 7

*Dinkins v. Schinzel*,
362 F. Supp. 3d 916 (D. Nev. 2019) ........ 8

*Fed. Trade Comm'n v. Publ'g Clearing House, Inc.*,
104 F.3d 1168 (9th Cir. 1997) ........ 1

*FTC v. AMG Capital Mgmt., LLC*,
910 F.3d 417 (9th Cir. 2018),
*cert granted*, No. 19-508, 2020 WL 3865250 (U.S. Jul. 9, 2020) ........ 7

*FTC v. Connelly*,
No. 06-cv-701, 2006 WL 6267337 (C.D. Cal. Dec. 20, 2006) ........ 1

*FTC v. Cyberspace.Com LLC*,
453 F.3d 1196 (9th Cir. 2006) ........ 1, 2, 3

*FTC v. Gill*,
265 F.3d 944 (9th Cir. 2001) .......... 1

*FTC v. Johnson*,
96 F. Supp. 3d 1110 (D. Nev. 2015) .......... 1

*FTC v. OMICS Grp., Inc.*,
374 F. Supp. 3d 994 (D. Nev. 2019),
*aff'd*, No. 19-15738, 2020 WL 5497968 (9th Cir. Sept. 11, 2020) .......... 3

*FTC v. Pantron I Corp.*,
33 F.3d 1088 (9th Cir. 1994) .......... 2

*FTC v. Publ'g Clearing House, Inc.*,
104 F.3d 1168 (9th Cir. 1997) .......... 7

*FTC v. Stefanchik*,
559 F.3d 924 (9th Cir. 2009) .......... 1, 2, 3

*Iglesia Ni Cristo v. Cayabyab*,
No. 18-cv-00561, 2019 WL 3997474 (N.D. Cal. Aug. 23, 2019) .......... 8

*In re Edmond*,
934 F.2d 1304 (4th Cir. 1991) .......... 9

*Jeter v. Credit Bureau, Inc.*,
760 F.2d 1168 (11th Cir. 1985) .......... 2

*Kraft, Inc. v. FTC*,
970 F.2d 311 (7th Cir. 1992) .......... 3

*Lyons v. England*,
307 F.3d 1092 (9th Cir. 2002) .......... 10

*Nationwide Life Ins. Co. v. Richards*,
541 F.3d 903 (9th Cir. 2008) .......... 9

*Nilsson v. City of Mesa*,
503 F.3d 947 (9th Cir. 2007) .......... 1, 5, 6, 7

*Orr v. Bank of America*,
285 F.3d 764 (9th Cir. 2002) ........ 1, 8
*Romero v. Nev. Dept' of Corrections*,
673 F. App'x 641 (9th Cir. 2016) ........ 8
*RV Ventures, Inc. v. City of Seattle*,
307 F.3d 1045 (9th Cir. 2002) ........ 10
*SEC v. Benson*,
657 F. Supp. 1122 (S.D.N.Y. 1987) ........ 9
*SEC v. Colello*,
139 F.3d 674 (9th Cir. 1998) ........ 9
*Thornhill Pub'g Co., Inc. v. GTE Corp.*,
594 F.2d 730 (9th Cir. 1979) ........ 5, 6
*United States v. Cox*,
633 F.2d 871 (9th Cir. 1980) ........ 7
*Villiarimo v. Aloha Island Air, Inc.*,
281 F.3d 1054 (9th Cir. 2002) ........ 6

**Statutes**

12 U.S.C. § 5481 ........ 3, 4, 5
12 U.S.C. § 5511 ........ 5
12 U.S.C. § 5564 ........ 10
15 U.S.C. § 45 ........ 10
15 U.S.C. § 53 ........ 10

**Rules**

Fed. R. Civ. P. 26 ........ 7
Fed. R. Civ. P. 56 ........ 5, 6, 8
Fed. R. Evid. 602 ........ 7
Fed. R. Evid. 701 ........ 7

Fed. R. Evid. 902 .......... 8

Fed. R. Evid. 1006 .......... 8

**Other Authorities**

Black Law's Dictionary (11th Ed. 2019) .......... 5

A quick glance at the thousands of records submitted by Defendant Aria (Aria) with his Opposition might lead the Court to wonder whether this case is too fact intensive to be decided at the summary judgment stage. It is not. The relevant core facts, about which there is no dispute, demonstrate that Aria and Global (collectively, Defendants) are liable for violating the Consumer Financial Protection Act and that restitution and a penalty are warranted in this matter.[1]

## I. There is no genuine dispute about the material facts supporting the Bureau's summary judgment motion.

To avoid summary judgment, a non-movant "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."[2] In particular, parties may not rely on a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence."[3] Such affidavits are "insufficient to create a genuine issue of material fact."[4] Here, Aria makes a number of non-viable legal arguments, fails to provide any valid legal challenges to the evidence provided by the Bureau, and offers no new cognizable evidence..

**A. The Court Has Authority to Grant Summary Judgment on Deception Claims and the Bureau has Established Deception Here:** As an initial matter, in his opposition, Aria misunderstands the law. He asserts that these deception claims must be determined by a jury.[5] But deception claims—including net impression deception claims—are routinely and appropriately decided on summary judgment.[6] Aria also

---

[1] Aria concedes, and it is undisputed, that at least 76,000 consumers paid Defendants at least $4,783,064 for their program between 2011 and 2015. ECF No. 112-1 at Fact 65.

[2] *FTC v. Johnson*, 96 F. Supp. 3d 1110, 1119 (D. Nev. 2015) (citing *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991) and *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002)).

[3] *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) (citing *Fed. Trade Comm'n v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997)).

[4] *Id.*

[5] Opp'n at 2:4–5, 23:4–21.

[6] *E.g.*, *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009); *FTC v. Cyberspace.Com LLC*, 453 F.3d 1196, 1199-1200 (9th Cir. 2006); *FTC v. Gill*, 265 F.3d 944, 950, 957 n.10 (9th Cir. 2001). The two cases Aria cited, *FTC v. Connelly*, No. 06-cv-701, 2006 WL 6267337 at *12 (C.D. Cal. 2006) and *Jeter*

misunderstands the legal test for deception as *actual* deception—suggesting that specific consumers must be shown to have been deceived by a misrepresentation.[7] The CFPA instead requires a showing that a representation is *likely* to deceive consumers acting reasonably in the circumstances.[8] There is no genuine dispute about the language and format of the solicitation packets containing the misrepresentations at issue in this case, and, as demonstrated in the Bureau's motion, they were likely to deceive consumers acting reasonably.[9] It is undisputed that neither Aria nor Global applied for or assisted consumers in obtaining financial aid, as the solicitation packets suggested they would.[10] There is also voluminous evidence that actual consumers believed that the product or service provided by Defendants was not what was offered, and no probative contrary evidence.[11] There is therefore ample basis to conclude that the solicitation packets made misrepresentations likely to mislead reasonable consumers as a matter of law. And while Aria suggests that his offer of a refund to dissatisfied customers is a defense to a deception claim,[12] as this Circuit has recognized, money-back guarantees are no defense.[13]

---

*v. Credit Bureau, Inc.*, 760 F.2d 1168, 1177 (11th Cir. 1985), raise fact issues regarding what services were provided to consumers, whereas in this case there is no dispute that the products or services ultimately provided to consumers were the guidebooks titled "Financial Aid Package," which were not financial aid, applications for financial aid on consumers' behalf, or individualized advice.

[7] Opp'n at, *e.g.*, 12:17–13:2; 14:16–18; 19:5–21:7..

[8] *See Cyberspace.Com*, 453 F.3d at 1200; *CFPB v. Gordon*, 819 F.3d 1179, 1192-93 (9th Cir. 2016).

[9] ECF No. 106-1 at 3:13–10:1; 12:11–14:12; 17:15–23:4.

[10] ECF No. 106-27, SJX 25 (solicitations); ECF No. 106-25, SJX 23 (describing solicitations in detail); ECF No. 112-1 at Fact 43 (undisputed that "Defendant never applied for financial aid on behalf of consumers or contacted any person to apply for financial aid on behalf of consumers").

[11] Evidence of actual deception is highly probative of the elements of deception. *Cyberspace.Com*, 453 F.3d at 1201; *Stefanchik*, 559 F.3d at 929. As described in is underlying brief, ECF No. 106-1 at 12:11–14:12, the Bureau's evidence includes 14 sworn declarations from consumers who were misled, SJX 7-20, and numerous consumer complaints to the FTC and the Better Business Bureau, SJX 22–23 & 56–58, as well as statements by the Better Business Bureau, SJX 52-55 & 60, numerous colleges and universities, SJX 29-51, and the State of Iowa, SJX 59, warning of Defendants' potentially misleading conduct.

[12] Opp'n at 6:16–20; 19:15–18.

[13] *See, e.g., Cyberspace.Com*, 453 F.3d at 1201-02 (citing *FTC v. Pantron I Corp*, 33 F.3d 1088, 1103

Aria next argues that any potential deception is cured by the certification section of the form accompanying his solicitation letters, pointing to select phrases in a block of text that states Global is "unable to guarantee results" and "is not affiliated with any educational institutions, government agencies, or funding sources."[14] These statements do not meet the legal standard for disclaimers. To be effective, disclaimers must be both sufficiently prominent and unambiguous enough to leave consumer with an accurate impression of the product provided.[15] The phrases that Aria claims are curative—that Defendants do not guarantee results and are not affiliated with various other institutions—are not unambiguous. They do not state that Defendants do not apply for scholarships on behalf of consumers or provide any financial aid directly. They are also not prominent: they do not appear on the solicitation letter; rather, they are buried within a block of text on a form soliciting biographical information.[16]

**<u>B. Defendants are Covered Persons and Aria is a Related Person</u>:** Aria also argues that he is not properly subject to the CFPA's jurisdiction because Defendants are not covered persons and he is not a related person.[17] But Aria is a related person, and thus a covered person, because the Bureau has established that: 1) Aria is a "director, officer, or employee charged with managerial responsibility…" or "a controlling shareholder or agent" of Global, and 2) Global is a "covered person."[18] Aria does not dispute the first element—he concedes his role and level of involvement in Global's activities as its

(9th Cir. 1994)). Further, the record is replete with examples of Defendants refusing to provide refunds when asked. *See, e.g.*, SJX 9 Biesiada Decl. ¶11 (unable to get refund despite calling five times); SJX 10 Chandler ¶¶ 13-14 (accused by Defendants of slander and impliedly threatened with legal action); SJX 11 Coffer ¶¶ 12-13 (received "nasty and threatening" emails from Defendants when requesting refund).

[14] Opp'n at 4:18–24. Aria's claim that his website disclaims his letters also fails. *See infra* Section C.

[15] *Cyberspace.Com*, 453 F.3d at 1200 (disclaimers must be unambiguous); *Stefanchik*, 559 F.3d at 928; *FTC v. OMICS Grp., Inc.*, 374 F. Supp. 3d 994, 1010 (D. Nev. 2019) *aff'd*, No. 19-15738, 2020 WL 5497968 (9th Cir. Sept. 11, 2020) (citing *Kraft, Inc. v. FTC*, 970 F.2d 311, 325 (7th Cir. 1992)).

[16] *See* ECF No. 106-27, SJX 25 (solicitation templates) at 5, 11, 17, 23, and 29.

[17] Opp'n at 8:8–11:11.

[18] 12 U.S.C. § 5481(25).

owner, CEO, and registered agent.[19] He only contests that Global is a covered person, claiming it did not "provide" financial products or services to consumers as defined by the CFPA. The definition of "covered person," however, includes those that "offer" consumer financial product or services as well as those that "provide" them."[20] As discussed below, Defendants' solicitation packets *offered* such services; that Defendants did not actually provide what was offered does not inoculate Aria from liability.

Aria also argues that Global did not "provide" financial advisory services because its ultimate product—a booklet—was not "individualized" to consumers.[21] The CFPA's relevant definition of "financial product or service" is "providing financial advisory services . . . to consumers on individual financial matters or relating to proprietary financial products or services."[22] As noted, the relevant legal standard covers both offering and providing such products or services.[23] To the extent that Aria contends Defendants did not *offer* "individualized" services,[24] he does so by arguing that the solicitations do not contain the word "individualized" and that instead they employ the word "targeted," which he argues has a broader meaning.[25] Aria offers no support for the proposition that a solicitation must use the term "individualized" to describe offered services to come within the statutory definition. And the relevant facts—including the detailed questions in his Student Aid Profile Form and his use of unique "Student Profile Numbers" in his letters—plainly indicate that the solicitation offered advice and assistance on individual financial matters.[26] Defendants' solicitations offered to advise

---

[19] ECF No. 112-1 at Facts 3, 6.

[20] 12 U.S.C. § 5481(6)(A).

[21] Opp'n at 8:19–11:2. In the middle of his covered person argument, Aria states that "Global **did** promise to 'individually match' students with financial aid programs or provide students with 'individualized' Guidebooks." Opp'n at 9:3–4 (emphasis added). This statement is likely a typo.

[22] 12 U.S.C. § 5481(15)(A)(viii).

[23] 12 U.S.C. § 5481(6)(A).

[24] Opp'n at, *e.g.*, 9:3–5; 10:8–11; 15:6.

[25] *See, e.g.*, Opp'n at 9:14–21; 10:6–11.

[26] ECF No. 106-1 at 16:15–17:5; *see also CFPB v. ITT Ed. Servs., Inc.*, 219 F. Supp. 3d 878, 909 (S.D.

students on financial aid matters such as whether, when, and which financial aid the individual consumer should apply for.[27] Thus, the solicitations advised consumers on the individual financial matter of that consumer's financial aid opportunities.

Defendants' acts or practices also fall within the second part of the CFPA's "financial advisory services" definition. The solicitation packets offer to provide "financial advisory services . . . to consumers . . . relating to *proprietary* financial products or services."[28] Although Aria contends Defendants' "program" cannot be proprietary because they lack a trademark or trade secrets,[29] he offers no legal support for this manufactured, non-statutory requirement. Black's Law Dictionary defines proprietary as "of, relating to, or involving a proprietor" and proprietor as "an owner, esp. one who runs a business."[30] There is no dispute the "program" referenced in Defendants' solicitation packets is "owned" by Global, and relatedly by Aria.[31] Moreover, that the "program" was in fact illusory and the information offered simply obtained from publicly available sources[32] does nothing to change the way the solicitations described it, which was as a proprietary program that was worth students' money to obtain.

**C. Aria Fails to Provide Any Cognizable Evidence to Demonstrate a Genuine Dispute of Material Fact:** In an attempt to manufacture a factual dispute, Aria relies

Ind. 2015) (finding ITT provided financial advisory services to its students by advising them on related finances); *CFPB v. Access Funding*, 270 F .Supp. 3d 831, 846-47 (D. Md. Sept. 13, 2017) (noting that listed examples of financial advisory services are illustrative and finding "one who 'provides financial advisory services . . . to consumers on individual financial matters' is a 'covered person,' regardless of the specific nature of that financial advice"); 12 U.S.C. § 5511 (purpose of the CFPA is to ensure "that markets for consumer financial products and services are fair, transparent, and competitive.")

[27] As described in the Bureau's motion, consumers reasonably believed that Defendants were akin to a school financial aid counselor and that Defendants' "program" was a financial aid program. ECF No. 106-1 at 17:1–5; ECF No. 106-2 at Facts 34–35; SJX 13, Lee Decl. ¶ 8; SJX 17, Sanjurjo Decl. ¶ 6.

[28] 12 U.S.C. § 5481(15)(A)(viii) (emphasis added).

[29] Opp'n at 10:13–17.

[30] Black Law's Dictionary (11th Ed. 2019).

[31] *See* ECF No. 112-1 at Facts 3, 6.

[32] Opp'n at 10:16-17.

primarily on his own opinion.[33] He submits exhibits E1–E14, which contain his subjective disagreements with statements made in the consumer declarations submitted in support of the Bureau's motion. To rebut these consumer declarations, Aria variously contends that the consumers are disgruntled and not reasonable, and therefore not credible.[34] In effect, Aria disagrees with sworn statements from declarants, then, in his opposition (and statement of facts), uses this disagreement to support the conclusion that each and every declarant (and every consumer who submitted a complaint) is "unreasonable."[35] But evidence provided through an affidavit must be supported by facts and personal knowledge.[36] Because Aria has not provided evidence that he possesses personal knowledge of the declarants' interpretations, and because his statements are not rooted in fact, they should be disregarded.[37]

Aria also seeks to create a fact dispute through his website. In response to the

---

[33] Aria also points to two enforcement investigations from State Attorneys General that he claims sanctioned Defendants' conduct, Opp'n at 5:13-21; 6:21-22; 18:11–19:4. Neither indicates approval of their conduct in any manner. One resulted in a consent order banning conduct by Global within the state of Iowa and imposing a $25,000 fine. *See* ECF No. 106-62, SJX 59 (Iowa consent order). While the other did not result in any publicly revealed action, that is not akin to sanctioning Defendants' conduct. Aria's claim that it does is based on a statement from his former attorney, ECF No. 112-13, Ex JI–J6 at 1331, which is inadmissible hearsay and was not produced by Aria during discovery despite the Bureau's requests. *See, e.g.*, ECF No. 106-3, SJX 1 at 6:5-25; 106-5, SJX 3 at 6:7-22.

[34] Opp'n at 19:5–14; ECF No. 112-1 at Facts 31, 35–36, 57; ECF No. 112-8, Def.'s Ex EI-E14 at, *e.g.*, page 4 ¶ 5 (disputing consumer's interpretation that Defendants' Student Profile Form requests *detailed* personal information on the basis that "The Form asks for trivial 'general information' . . .").

[35] Aria takes the same approach to each and every college advisory. *See* ECF No. 112-16, Ex. M.

[36] *See* Fed. R. Civ. P. 56(c)(4) (requiring personal knowledge); *Thornhill Pub'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 737-39 (9th Cir. 1979) (disregarding conclusory and speculative affidavits); *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) (conclusory, self-serving affidavit insufficient to create a fact issue); *Arellano v. Cty. of San Diego*, No. 3:14-CV-2404, 2020 WL 4921983, at *13 (S.D. Cal. Aug. 21, 2020) (Curiel, J.) (disregarding evidence provided by *pro se* Plaintiff because it did not demonstrate personal knowledge).

[37] *See, e.g.*, *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 n.5, 1061 (9th Cir. 2002) (district court properly disregarded declaration that included facts beyond the declarant's personal knowledge); *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (disregarding conclusory self-serving statements in brief and affidavit for lacking factual support); Nilsson, 503 F.3d 947, 952 n.2. This evidence is also inadmissible under Fed. R. Evid. 602 (lack of personal knowledge) and Fed. R. Evid. 701 (improper lay opinion). *See Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1255 (9th Cir. 1982); *United States v. Cox*, 633 F.2d 871, 876 (9th Cir. 1980).

Bureau's assertion that Defendants' solicitation packets give the impression students are applying for financial aid, Aria contends that the solicitation packets and his website "included language explicitly stating that Global *does not* apply for aid on behalf of, or provide aid directly to, consumers."[38] However, this language does not appear in Defendants' solicitation packets, and Aria only cites to his website to support the contention that he included such a statement. Aria is therefore arguing that an online disclaimer located somewhere on his website is sufficient to correct the misrepresentations contained in a mailed solicitation letter. But documents other than those containing the misrepresentation are immaterial to deception claims.[39] There is also no evidence in the record that consumers reviewed Defendants' website before they responded to his letters, or the period during which this language purportedly appeared on Defendants' website.[40]

**D. Aria's Other Arguments Lack Bases in the Law:** Aria makes a number of other arguments designed to divert the Court's attention from relevant facts and law, but they are red herrings. Aria argues that the evidence put forward by the Bureau cannot be considered in deciding this motion because it is not properly authenticated; that the Bureau is not entitled to an adverse inference; and that the statute of limitations bars some of the Bureau's case.

**1. Authentication:** Aria claims that complaint summaries and college advisories submitted by the Bureau in support of its motion for summary judgment cannot be considered because they are not "authenticated," but materials presented at this stage

[38] Opp'n at 13:8–10; see also 3:17-22 (claiming website provides a disclaimer).

[39] *See FTC v. AMG Capital Mgmt., LLC*, 910 F.3d 417, 424 (9th Cir. 2018) ("any facts other than the [document containing the misrepresentation] . . . and their presentation in the document are immaterial"), *cert granted*, No. 19-508, 2020 WL 3865250 (U.S. Jul. 9, 2020) (affirmed).

[40] The website screenshot put forward by Aria was not provided during discovery, including in response to the Bureau's requests to identify any documents supporting Aria's affirmative defenses or to provide a basis for any affirmative defenses and should be precluded. Fed. R. Civ. P. 26. But even crediting Aria's claim that this language existed on his website, he only states that that it was available to consumers from 2014 on. ECF No. 112-2 at 14:23–17:19.

need only be presented in a form that can later be made admissible as evidence.[41] Further, the Bureau's evidence complies with the Rules of Evidence.[42]

**2. <u>Adverse Inference</u>:** In its brief, the Bureau seeks an adverse inference that the booklet customization was limited to the level of customization in the guidebooks provided by consumers to the Bureau (and submitted in support of the Bureau's motion for partial summary judgment) because Aria refused to answer specific questions about that topic, invoking his Fifth Amendment privilege against self-incrimination. Aria argues that the Bureau should not be granted this inference because (1) he has a good faith reason supporting his decision to assert his Fifth Amendment privilege, and (2) the Bureau already has the information it seeks because Aria produced 4,500 pages of booklet information and Aria already answered the Bureau's questions in discovery.[43] As to the first assertion, Aria misstates the legal standard, which does not include analysis of his rationale for asserting the Fifth Amendment or the appropriateness of the assertion.[44] As to the second, Aria conflates volume and content.[45] Aria repeatedly invoked the Fifth

---

[41] *See* Opp'n at 20:16–22:15; Fed. R. Civ. P. 56(c)(2); *Adams v. Kraft*, No. 10-cv-00602, 2011 WL 5076528, at *25 n.5 (N.D. Cal. Oct. 25, 2011) (inquiry is whether documents are capable of being admissible at trial). Aria's reliance on *Orr v. Bank of America*, 285 F. 3d 764, 773 (9th Cir. 2002) is misplaced because later amendments to Rule 56 changed it to mandate only that the substance of the proffered evidence would be admissible at trial. *See Dinkins v. Schinzel*, 362 F. Supp. 3d 916, 922–23 (D. Nev. 2019) (citing *Romero v. Nev. Dept' of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016)).

[42] Rule 1006 permits summary evidence of voluminous writings. Fed. R. Evid. 1006. The Bureau produced the complaints underlying the summary page submitted with the Zelinsky declaration, *see* ECF No. 106-24, SJX 22 ¶¶ 3–4, and will provide them to the Court if necessary. As to the college advisories, website screenshots may be authenticated by a person's testimony that he is familiar with the online content and the exhibits are in the same format as the online content, and if the declarant describes the website retrieval process. *Iglesia Ni Cristo v. Cayabyab*, No. 18-cv-00561, 2019 WL 3997474, at *4 (N.D. Cal. Aug. 23, 2019) (internal citations omitted); Fed. R. Evid. 902, Advisory Committee Notes to 2017 Amend. at ¶ 5. Here, Mr. Zelinsky's declaration demonstrates his personal knowledge and described both his familiarity with and methods through which he obtained Consumer Sentinel Network complaints and the college advisories. SJX 22 ¶¶ 3–4, 12–24.

[43] Opp'n at 23:23–25:13.

[44] *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911 (9th Cir. 2008) (describing standard).

[45] The 4,500 pages of booklet information offered by Aria cannot substitute for the sworn testimony requested by the Bureau. In his opposition, Aria points to only three booklets that he contends were sent to actual consumers, Opp'n at 22:21–23:2; however, he asserted the Fifth to avoid answering questions

Amendment during his deposition and throughout discovery, depriving the Bureau of the ability to test his assertions regarding the content of the booklets he actually sent to consumers.[46] Because he obstructed discovery by asserting the privilege, "[D]efendant has forfeited the right to offer evidence disputing the [Bureau]'s evidence or supporting his own denials."[47] Having chosen the Fifth Amendment, Aria must bear the consequences of his choice.[48]

The Court should also disregard assertions made by Aria for the first time in his opposition—without factual support and in contradiction to his prior discovery response—(1) that the guidebooks provided by consumers to the Bureau and submitted in support of the Bureau's motion for summary judgment are incomplete, and (2) that he did in fact keep records of the types of booklets he sent to consumers.[49] Aria offers no support for these assertions other than his self-serving declaration and, despite discovery requests from the Bureau,[50] these "facts" do not exist in the record and must be disregarded.[51] But even if the Court declines to grant the Bureau's request for an adverse inference, the content of the customizable sections of template guidebooks are not in dispute.[52] The Court can therefore still find as a matter of law that the bare-bones

---

around the customization of any booklets; *see infra* note 46. Even if considered by the court, these cherry-picked booklets were only sent to three consumers in 2015 in Iowa (where Aria's business is now banned), and do not have any bearing on what consumers received prior to 2015 or in other states.

[46] Aria's claim that he sufficiently explained the customization in his booklets in written documents, Opp'n at 15:15–20, misses the point, which is that he refused to provide sworn testimony to test and further probe these written assertions. ECF No. 106-8, SJX 6 at, *e.g.*, 14:25-15:23; 54:14-25; 57:16-24.

[47] *SEC v. Colello*, 139 F.3d 674, 678 (9th Cir. 1998) (citing *SEC v. Benson*, 657 F. Supp. 1122, 1129 (S.D.N.Y. 1987)).

[48] *See In re Edmond*, 934 F.2d 1304, 1308-1309 (4th Cir. 1991) (the Fifth Amendment cannot be invoked as a shield to oppose depositions and then discarded for the limited purpose of making statements to oppose summary judgment); *Benson*, 657 F. Supp. at 1129 (abuse of Fifth Amendment to allow a civil litigant to offer proof while denying the adversary discovery of his contentions).

[49] Opp'n at 16:4-10 (incomplete booklets); ECF No. 112-1 at Fact 50 (recordkeeping).

[50] *E.g.*, ECF No. 106-3, SJX 1 at 6:8–25; ECF No. 106-5, SJX 3 at 6:7–22 & 7:19–28 & 8:1–19, to which Aria refused to answer.

[51] *See infra* notes 36 & 37.

[52] *See* ECF No. 112-1 at Facts 45 (undisputed that Aria did not individually tailor booklets) 49

scholarship information that could be provided in these guidebooks, which did not even include the scholarship application deadlines, failed to live up to what was offered in Defendants' solicitation packets.

**3. <u>Statute of Limitations</u>:** Finally, Aria argues that certain of the Bureau's evidence should not be considered because it is outside of the "relevant period." [53] Assuming he is making a statute-of-limitations argument, it is well established that evidence concerning time-barred conduct may still be relevant to assessing other conduct that is not time barred.[54] Nor has Aria shown that any of the Bureau's claims are time-barred in the first place. The CFPA's statute of limitations bars claims three years after the date of discovery of the violation[55]—not three years after the date of the violation, as Aria mistakenly claims.[56] The Bureau filed this lawsuit on October 29, 2015. Aria makes no argument and provides no support for the contention that the Bureau discovered this case before July 29, 2012.[57]

## CONCLUSION

For the reasons stated here and in the Bureau's brief, the Court should grant summary judgment in the Bureau's favor on Counts I through III as to liability and relief.

(undisputed that scholarship information included scholarship name, contact info, and a brief description of the scholarship for some scholarships); *see also* ECF 112-20–24, OSJX P2–P6 (guidebooks material produced by Aria in support of his opposition), ECF No. 106-3, SJX 1, at 25:10–28 (Aria's interrogatory answers describing customizable sections of template guidebooks).

[53] *See. e.g.*, Opp'n at 20:7-10; *see also* ECF No. 112-1 at Facts 1, 12.

[54] *RV Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1062 (9th Cir. 2002); *Lyons v. England*, 307 F.3d 1092, 1109 (9th Cir. 2002).

[55] 12 U.S.C. § 5564(g)(1).

[56] *See, e.g.*, ECF No. 112-1, Fact 1.

[57] If Aria means to imply that he cannot be held liable for violations that occurred before July 21, 2011, the "designated transfer date" on which the Bureau assumed its full range of authorities, that is incorrect as well. The deceptive conduct charged in Counts I–III was illegal under the FTC Act both before and after the designated transfer date. *See* 15 U.S.C. §§ 45(a), 53(b); *see also CFPB v. Gordon*, 819 F.3d 1179, 1192–93 (9th Cir. 2016) (applying same elements for deception claim under the CFPA as under FTC Act). And the Bureau seeks only those remedies that were available to the FTC at that time.

Respectfully submitted,

John C. Wells
Deputy Enforcement Director

James T. Sugarman
Assistant Litigation Deputy

/s/ Nina Schichor
Nina Schichor, MD Bar
(MD Bar Does Not Issue Bar Numbers)
(E-mail: nina.schichor@cfpb.gov)
(Phone: 202-435-9770)
Amanda C. Roberson, MN Bar 0398511
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

Dated: October 9, 2020

# CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2020, I electronically filed the foregoing document via ECF and it was electronically sent to pro se Defendant Armond Aria.

/s/ Nina Schichor
Nina Schichor
*Enforcement Attorney*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552