**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br>    *Plaintiff-Appellee*,<br><br>v.<br><br>ARMOND ARIA, aka Armond Amir Aria, owner and CEO of Global Financial Support, Inc.,<br>    *Defendant-Appellant*,<br><br>and<br><br>GLOBAL FINANCIAL SUPPORT, INC., dba College Financial Advisory, Student Financial Resource Center,<br>    *Defendant*. | No. 21-55525<br><br>D.C. No.<br>3:15-cv-02440-GPC-AHG<br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Argued and Submitted November 15, 2022
San Jose, California

Filed December 13, 2022

Before: Susan P. Graber, Richard C. Tallman, and
Michelle T. Friedland, Circuit Judges.

Opinion by Judge Tallman

## SUMMARY[*]

### Consumer Financial Protection Act

The panel affirmed the district court's summary judgment granted to the Consumer Financial Protection Bureau ("CFPB") in its civil enforcement action alleging that Armond Aria mailed deceptive solicitations to current and prospective college students, advertising a targeted program for assisting those students in applying for scholarships.

Aria contended that he was not a "covered person" subject to the CFPB's authority because he merely provided nonfinancial advice and free, gift-based scholarships. The Consumer Financial Protection Act ("CFPA") lists ten categories of a "consumer financial product or service" and permits the CFPB to promulgate additional definitions by regulations. The eighth category is relevant here: "providing financial advisory services . . . to consumers on individual financial matters or relating to proprietary financial products or services . . . ." 12 U.S.C. § 5481(15)(A)(viii). The panel rejected Aria's argument that he did not provide financial advisory services. First, Aria was incorrect in claiming that

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

scholarships are not financial in nature merely because they do not have to be repaid. Second, the record establishes that Aria's advice extended beyond the topic of scholarships, covering the entire field of student financial aid. Third, Aria did, in fact, hold himself out as an expert in finance. The panel held that Aria provided "financial advisory services," and the district court did not err in concluding that Aria was a "covered person" under the CFPA.

Next, Aria contended that the district court erred by failing to consider the net impression of his solicitations when it determined that they were deceptive. The panel expressly adopted the net impression test, which provides that a solicitation may be likely to mislead by virtue of the net impression it creates even though the solicitation also contains truthful disclosures, in enforcement actions under the CFPA. The panel held that Aria was incorrect that the district court failed to consider the net impression of the entirety of his solicitation materials. In addition, the district court did not err by concluding that no issue of material fact existed as to the deceptive nature of Aria's conduct based upon the net impression created by his entire solicitation packet.

The panel held that Aria forfeited his challenge to the district court's calculation of the restitution and civil penalties because he did not adequately raise the arguments to preserve them below.

## COUNSEL

Tanmay Shukla (argued), Chicago, Illinois, for Defendants-Appellant.

Derick Koo Sohn Jr. (argued) and Kevin E. Friedl, Senior Counsels; Laura M. Hussain, Assistant General Counsel; Steven Y. Bressler, Acting Deputy General Counsel; Seth Frotman, General Counsel; Consumer Financial Protection Bureau; Washington, D.C.; for Plaintiff-Appellee.

## OPINION

TALLMAN, Circuit Judge:

The Consumer Financial Protection Act (CFPA) prohibits providers of "financial advisory services" from engaging in deceptive conduct. 12 U.S.C. §§ 5481(15)(A)(viii), 5536(a)(1)(B). Armond Aria mailed millions of solicitations to current and prospective college students, advertising a targeted program for assisting those students in applying for scholarships. The Consumer Financial Protection Bureau (CFPB) filed an enforcement action in the district court alleging the solicitations were deceptive. The district court agreed and granted summary judgment to the CFPB.

On appeal, Aria primarily contends that he did not provide financial advisory services within the meaning of the CFPA because he offered advice on gift-based scholarships as opposed to investments or debt instruments. Alternatively, he argues that his solicitations were not deceptive. We disagree and affirm.

I

A

Aria was the founder, owner, CEO, and registered agent of the now-defunct Global Financial Support, Inc. (Global). Operating under the names "College Financial Advisory" and "Student Financial Resource Center," Global mailed millions of solicitations to current and prospective college students from 2011 to 2016. The solicitation packets contained a letter, an information sheet, a Demographic Form, and a return envelope.

The letters featured official-looking letterhead with college-themed seals and an arbitrary filing deadline. The wording varied from year to year, but the letters generally advised students to avoid taking out loans until they had applied to all of the available "free" financial aid programs. The letters asked students and their parents to disclose basic demographic information in the Demographic Form and pay Global a $59 to $78 "processing" fee. In exchange, the letters vaguely promised to enroll the students in a financial aid program. Meanwhile, the Demographic Form promised "to provide as many targeted financial aid opportunities as possible to each and every student." In fine print footnotes, the letters disclaimed any affiliation with governmental or educational institutions.

Minus refunds, Global received $4,738,028 in fees from at least 76,000 students. The only product or service that students received was a booklet. Each booklet contained a welcome memo that provided a general overview of student financial aid with advice on topics ranging from federal student loans to the tax implications of attending college. The booklets also contained sections on federal and state financial aid programs. Although Global included some

tailored information based on students' responses to the Demographic Form, Aria admitted the information was compiled "at a group level" and he "did not individually tailor [the booklets] to" any individual student. For example, students sometimes received the contact information for all 50 states' financial aid agencies—regardless of the students' residency—and were directed to Google search their home state's financial aid opportunities. Additionally, Aria asked students to list their interest in playing collegiate sports, but the booklets provided only a generic "list of scholarships available to student athletes regardless of sport."

Hundreds of complaints were submitted to various state, federal, and nonprofit consumer watchdog entities, which triggered the federal consumer fraud investigation that led to this proceeding.

B

In October 2015, the CFPB filed a civil enforcement action against Global and Aria. In relevant part, the CFPB alleged that Defendants' conduct was deceptive because it misled students into thinking: (1) Global would provide a program to assist them in applying for scholarships; (2) Global would match them to individually targeted scholarship opportunities; and (3) they would miss financial aid opportunities by not complying with the filing deadline.

The district court stayed the case due to a pending collateral federal criminal investigation of Aria. In May 2019, the district court lifted the stay. In August 2020, the CFPB moved for summary judgment against Aria and default judgment against Global. The district court granted the CFPB's motion for default judgment against Global after Global failed to secure counsel to appear and defend the

corporation and granted the CFPB's motion for summary judgment against Aria.

With respect to Aria, the district court held that his conduct fell under the CFPB's enforcement authority. The district court also found that he deceived students from 2011 to 2015 by implying that he offered a program for financial aid applications; he deceived students from 2011 to 2016 by implying that he would match students with scholarships; and he falsely implied throughout the relevant period that students would forfeit his services if they failed to comply with his arbitrary deadlines. The district court awarded restitution in the form of $4,738,028 in revenues net of refunds and imposed a civil penalty of $10 million. The district court also awarded injunctive relief to the CFPB.

Aria appeals, arguing that he was not subject to the CFPB's authority because he provided nonfinancial advice on "free" scholarships; that the net impression of his solicitations was not deceptive; and that the district court erred in calculating the restitution and civil penalty sums.

II

"We review a district court's grant of summary judgment de novo and may affirm on any ground supported by the record." *CFPB v. Gordon*, 819 F.3d 1179, 1187 (9th Cir. 2016). We likewise review questions of statutory construction de novo. *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 603 (9th Cir. 2021).

III

The CFPA "makes it unlawful for a covered person [] 'to engage in any unfair, deceptive, or abusive act or practice.'" *CFPB v. CashCall, Inc.*, 35 F.4th 734, 746 (9th Cir. 2022) (quoting 12 U.S.C. § 5536(a)(1)(B)). Aria contends that he

was not a "covered person" subject to the CFPB's authority because he merely provided nonfinancial advice on free, gift-based scholarships.

12 U.S.C. § 5481(6)(A) defines a "covered person" as "any person that engages in offering or providing a consumer financial product or service." The CFPA lists ten categories of a "consumer financial product or service" and permits the CFPB to promulgate additional definitions by regulation. *See* § 5481(15)(A)(i)-(xi). The eighth category is relevant here: "providing financial advisory services . . . to consumers on individual financial matters or relating to proprietary financial products or services . . . ." § 5481(15)(A)(viii).

The CFPA does not provide a specific distinction between financial and nonfinancial activities, and the CFPB has yet to promulgate any relevant definitions or guidelines. *See* 12 C.F.R. §§ 1001.2, 1091.101 (2022). When a term goes undefined in a statute, we give the term its ordinary meaning. *CashCall, Inc.*, 35 F.4th at 746. "To determine ordinary meaning, we consider dictionary definitions." *Tomczyk v. Garland*, 25 F.4th 638, 644 (9th Cir. 2022) (en banc) (quoting *United States v. Cox*, 963 F.3d 915, 920 (9th Cir. 2020)).

Merriam-Webster's defines the adjective "financial" as "relating to finance." *Financial*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). It in turn provides several definitions for the noun "finance." Some are narrowly defined in relation to debt instruments or investments, but others are broadly defined as "money or other liquid resources of [an] . . . individual" or "the obtaining of funds or capital: FINANCING." *Id.* at *Finance* (n). "Financing" is likewise broadly defined as "the act or

process or an instance of raising or providing funds." *Id.* at *Financing*. And the transitive verb "finance" is defined as "to raise or provide funds or capital for" (e.g., finance "a new house") or "to furnish with necessary funds" (e.g., finance "*a son through college*"). *Id.* at *Finance* (vt) (emphasis added).

For several reasons, we reject Aria's argument that he did not provide "financial advisory services." § 5481(15)(A)(viii). First, Aria is incorrect that scholarships are not financial in nature merely because they do not have to be repaid. As discussed, the ordinary meaning of financial is broad and encompasses both cash financing and debt financing. Indeed, the definition of "finance" specifically contemplates raising funds, regardless of their origin, for college tuition. *Finance* (vt), MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). Advising students to exhaust scholarship opportunities before taking on debt is no less "financial" than advising students to leverage their unique access to federally subsidized loans.[1]

Second, the record establishes that Aria's advice extended beyond the topic of scholarships, covering the entire field of student financial aid. Although his solicitation letters focused primarily on scholarships, the booklets that

---

[1] Aria urges us to interpret the modifier "financial" narrowly in light of the CFPA's legislative history. He points out that Congress deleted language that would have included "other related advisory services" from an early version of the bill. *Compare* H.R. 4173, 111th Cong. § 4002(19)(A)(ix)(I) (Dec. 2, 2009) (as introduced in the House), *with* H.R. 4173, 111th Cong. § 1002(13)(A)(viii) (May 20, 2010) (as amended in the Senate). Even assuming "financial" should be read narrowly, Aria's conduct fell comfortably within the definition of "financial advisory services."

Aria mailed to paying students offered advice ranging from federal student loans, grants, and work study to tax subsidies and health insurance.[2] He even offered advice on leveraging a family home to pay for college, and he ultimately did advise accepting student loans as a last resort. Aria's advice covered the entire gamut of financial aid and was undoubtedly financial in nature.

Third, Aria argues that his advice cannot be considered financial because he did not hold himself out as an expert in finance. We need not address Aria's legal argument that § 5481(15)(A)(viii) is limited to purported experts offering financial advisory services because Aria did, in fact, hold himself out as an expert in finance. His business marketed itself as offering advisory services on financial aid. Global first did business under the name "College Financial Advisory" and then transitioned to "Student Financial Resource Center." These names naturally imply expertise in the field of student financial aid.

We hold that on this record Aria provided "financial advisory services" as defined in 12 U.S.C. § 5481(15)(A)(viii). Accordingly, the district court did not err by concluding that Aria was a "covered person" under the CFPA.

IV

Aria next argues that the district court erred by failing to consider the net impression of his solicitations when it determined they were deceptive. An unlawfully

---

[2] Because the CFPB has authority over those "*offering or providing* a consumer financial product or service," we look beyond Aria's solicitations to determine if his conduct fell within the CFPB's purview. § 5481(6)(A) (emphasis added).

"'deceptive' practice is one 'tending to deceive,' that is, 'to cause to believe the false.'" *CashCall, Inc.*, 35 F.4th at 746 (quoting *Deceive & Deceptive*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002)). In cases brought under the similarly worded Federal Trade Commission Act, we have explained that a "solicitation may be likely to mislead by virtue of the net impression it creates even though the solicitation also contains truthful disclosures." *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006). We have previously referenced the net impression test in enforcement actions brought under the CFPA, *see Gordon*, 819 F.3d at 1193; *CashCall, Inc.*, 35 F.4th at 740, and we expressly adopt it here.

Aria is incorrect that the district court failed to consider the net impression of the entirety of his solicitation materials. The district court referenced the net impression test throughout its analysis and concluded that "the net impression created by Mr. Aria's solicitation packets [was] likely to mislead reasonable consumers."

To the extent Aria challenges the district court's reasons for concluding the net impression was deceptive, his arguments also fall short. The record establishes that Aria promised to "proceed with [a] . . . program and apply for the maximum . . . financial aid programs" if students submitted the Demographic Form and paid the processing fee. Instead, the students merely received booklets. The record also establishes that Aria promised "to provide as many targeted financial aid opportunities as possible." Instead, students received "group level" information that was "not individually tailor[ed]" to them. Finally, the letters created a sense of urgency by listing filing deadlines. But Aria did not have a rule of treating late-filers differently. He simply pocketed the money and continued business as usual.

Aria also argues that a reasonable student could not have been deceived after reviewing the entire solicitation packet and responding to his request for basic, nonfinancial demographic information. But nothing Aria cites could possibly rescue prospective customers from the false impressions that his solicitations were designed to create. Reasonable students would assume that, by responding to Aria's requests for information, they were "proceed[ing]" with Aria's "program" to help them finance their college education.

The district court did not err by concluding that no issue of material fact existed as to the deceptive nature of Aria's conduct based upon the net impression created by his entire solicitation packet.

V

Aria also challenges, for the first time before us, the district court's calculation of the restitution and civil penalties. Because Aria did not adequately raise these arguments to preserve them below, he has forfeited them. *See Momox-Caselis v. Donohue*, 987 F.3d 835, 841-42 (9th Cir. 2021).

VI

The district court properly concluded that Aria was subject to the CFPB's authority and that no issue of material fact existed to undermine the deceptive nature of his conduct. Summary judgment was warranted on this record.

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

## Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate electronic filing system or, if you are a pro se litigant or an attorney with an exemption from the electronic filing requirement, file one original motion on paper.

**Petition for Panel Rehearing (Fed. R. App. P. 40; 9th Cir. R. 40-1) Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1) Purpose**
  **A. Panel Rehearing:**
  - A party should seek panel rehearing only if one or more of the following grounds exist:
    ➢ A material point of fact or law was overlooked in the decision;
    ➢ A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
    ➢ An apparent conflict with another decision of the Court was not addressed in the opinion.
  - Do not file a petition for panel rehearing merely to reargue the case.

  **B. Rehearing En Banc**
  - A party should seek en banc rehearing only if one or more of the following grounds exist:
    ➢ Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
    ➢ The proceeding involves a question of exceptional importance; or

> ➢ The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2) Deadlines for Filing:**
- A petition for rehearing must be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- See Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-2.

**(3) Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4) Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

2

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms*.
- Attorneys must file the petition electronically via the appellate electronic filing system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

**Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)**
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms*.

**Attorneys Fees**
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-8000.

**Petition for a Writ of Certiorari**
- The petition must be filed with the Supreme Court, not this Court. Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov.

**Counsel Listing in Published Opinions**
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
    - ➢ Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Maria Evangelista, maria.b.evangelista@tr.com);
    - ➢ **and** electronically file a copy of the letter via the appellate electronic filing system by using the Correspondence filing category, or if you are an attorney exempted from electronic filing, mail the Court one copy of the letter.

3

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 10. Bill of Costs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form10instructions.pdf

**9th Cir. Case Number(s)**

**Case Name**

The Clerk is requested to award costs to *(party name(s))*:

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**            **Date**
*(use "s/[typed name]" to sign electronically-filed documents)*

| COST TAXABLE | REQUESTED *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd, and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee / Appeal from Bankruptcy Appellate Panel Docket Fee | | | | $ |
| | | | **TOTAL:** | $ |

***Example:*** Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:
No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);
TOTAL: 4 x 500 x $.10 = $200.

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 10**          *Rev. 12/01/2021*